**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

STEPHEN ROBERT GOODMAN,
CHARLES JM. GREER,
on behalf of themselves and
all others similarly situated,

Plaintiffs,

Case No. 25-cv-00417-HYJ-PJG
Chief Judge: Hala Y. Jarbou
Magistrate Judge: Phillip J. Green

v.

HILLSDALE COLLEGE,

Defendant.
___________________________________/

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**[ORAL ARGUMENT REQUESTED]**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

ARGUMENT ...................................................................................................... 2

I. The Complaint Properly Alleges All Elements of a VPPA Violation. ............................ 2

A. Hillsdale College is a Video Tape Service Provider. ........................................ 2

1. Hillsdale College Online is a Business Distributing Videos. .................... 2

2. Hillsdale Cannot Duck VPPA Liability By Pretending That Its Online Video Offerings Are An Ancillary Appendage. ............................ 6

B. Plaintiffs are Consumers Under the VPPA Because They are Subscribers of the Services Offered by Hillsdale.. ............................................... 9

1. An Exchange Of Money Is Not Required To Be A Subscriber.. ............... 9

2. Plaintiffs Have Provided Sufficient Consideration To Be Subscribers. .. ....... 12

C. The Information Disclosed was Personally Identifiable Information. ........... 15

D. Hillsdale Uses a Pixel On Its Website Which Discloses Personally Identifiable Information. ........................................................................................ 15

II. Hillsdale's Disclosures are Not Protected By The Ordinary Course Of Business Exception. ........................................................................................................ 18

III. Amendment Would Not be Futile ........................................................................ 22

# TABLE OF AUTHORITIES

## CASES

*A.G. by & Through N.G. v. Cmty. Ins. Co.*
363 F. Supp. 3d 834 (S.D. Ohio 2019) .... 7
*Am. Fed'n of State, Cnty. & Mun. Emps.*
457 Mich. 74 (1998) .... 5
*Ambrose v. Bos. Globe Media Partners LLC*,
2022 WL 4329373 (D. Mass. Sept. 19, 2022) .... 9
*Ballard v. Insomniac Holdings, LLC*
2025 WL 1696558 (N.D. Cal. June 17, 2025) .... 8-9
*Bassett v. Nat'l Collegiate Athletic Ass'n*
528 F.3d 426 (6th Cir. 2008) .... 7
*Belozerov v. Gannett Co.*
646 F. Supp. 3d 310 (D. Mass. 2022) .... 9, 17-18
*Christopher v. SmithKline Beecham Corp.*
567 U.S. 142 (2012) .... 16
*Collins v. Toledo Blade*
720 F. Supp. 3d 543 (N.D. Ohio 2024) .... 21
*Comm'r v. Groetzinger*
480 U.S. 23 (1987) .... 4
*Connors v. Incoal, Inc.*
995 F.2d 245 (D.C. Cir. 1993) .... 4
*Daniel v. Cantrell*
375 F.3d 377 (6th Cir. 2004) .... 21
*Eichenberger v. ESPN, Inc.*
876 F.3d 979 (9th Cir. 2017) .... 18
*Ellis v. Cartoon Network, Inc.*
803 F.3d 1251 (11th Cir. 2015) .... 10, 13-14
*Ensley v. Associated Terminals*
304 Mich. 522 (1943) .... 4
*Exxon Mobil Corp. v. Allapattah Servs., Inc.*
545 U.S. 546 (2005) .... 21
*Golden v. NBCUniversal Media, LLC*
688 F. Supp. 3d 150 (S.D.N.Y. 2023) .... 9, 20
*Haines v. Cengage Learning, Inc.*
2025 WL 2045644 (S.D. Ohio July 22, 2025) .... 17-18
*Hall v. Fed. Bureau of Prisons*
2017 WL 8776823 (6th Cir. 2017) .... 23

*Hennessey v. Nat'l Collegiate Athletic Ass'n*
564 F.2d 1136 (5th Cir. 1977) ........ 5
*In re Facebook, Inc., Consumer Priv. User Profile Litig.*
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 9
*In re Hulu Privacy Litig.*
2012 WL 3282960 (N.D. Cal. 2012) ........ 10, 17, 22
*In re Vizio, Inc., Consumer Priv. Litig.*
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........ 6, 9
*Jackson v. Fandom, Inc.*
2023 WL 4670285 (N.D. Cal. July 20, 2023) ........ 6
*Krassick v. Archaeological Inst. of Am.*
2022 WL 2071730 (W.D. Mich. June 9, 2022) ........ 2-3, 6
*Lebakken v. WebMD, LLC*
640 F. Supp. 3d 1335 (N.D. Ga. 2022) ........ 6, 19-20
*Li v. Georges Media Group LLC*
2023 WL 7280519 (E.D. La. 2023) ........ 17
*Loc. No. 499, Bd. of Trs. of Shopmen's Pension Plan v. Art Iron, Inc.*
117 F.4th 923 (6th Cir. 2024) ........ 4
*Louth v. NFL Enters. LLC*
2022 WL 4130866 (D.R.I. Sept. 12, 2022) ........ 22
*Manza v. Pesi, Inc.*
2025 WL 1445762 (W.D. Wis. May 20, 2025) ........ 3, 16-18
*Mata v. Zillow Grp., Inc.*
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ........ 8-9
*McGriff By & Through Norwest Cap. Mgmt. & Tr. Co. v. U.S. Fire Ins. Co.*
436 N.W.2d 859 (S.D. 1989) ........ 5
*Mitchell Fam. Plan. Inc. v. City of Royal Oak*
335 F.Supp. 738 (E.D. Mich. 1972) ........ 4
*Mollett v. Netflix, Inc.*
795 F.3d 1062 (9th Cir. 2015) ........ 18
*Salazar v. Nat'l Basketball Ass'n*
118 F.4th 533 (2d Cir. 2024) ........ 11
*Salazar v. Paramount Glob.*
133 F.4th 642 (6th Cir. 2025) ........ 10
*Saunders v. Hearst Television, Inc.*
711 F. Supp. 3d 24 (D. Mass. 2024) ........ 22
*Sellers v. Bleacher Rep., Inc.*
2023 WL 4850180 (N.D. Cal. July 28, 2023) ........ 8-9, 18
*Steel Joist Institute, Inc. v. J. H. Mann, III, Inc.*
171 So.2d 625 (Fla. 2D DCA 1965) ........ 5

*Sterk v. Redbox Automated Retail, LLC*
770 F.3d 618 (7th Cir. 2014) ........ 21
*United States v. Day*
476 F.2d 562 (6th Cir. 1973) ........ 4
*W. Virginia v. Envtl. Prot. Agency*
597 U.S. 697 (2022)) ........ 10
*Yershov v. Gannett Satellite Info. Network, Inc.*
820 F.3d 482 (1st Cir. 2016) ........ 10, 12, 14, 16

**STATUTES**

18 U.S.C § 2710........ 1, 6, 9-10, 15

**RULES**

Fed R. Civ. P. 15(a) ........ 25

**PRELIMINARY STATEMENT**

Plaintiffs' Complaint is narrow and targeted. They assert only one cause of action: violation of the Video Privacy Protection Act ('VPPA"). 18 U.S.C § 2710. Their Complaint adequately pleads each element of that claim. ECF No. 1 ("Compl."). It details how Hillsdale College ("Hillsdale") operates an online college business at online.hillsdale.edu, which qualifies as a "video tape service provider" under § 2710(a)(4), and therefore must comply with the VPPA. Contrary to the VPPA, Hillsdale "knowingly disclose[d], to [third-parties], personally identifiable information concerning [its] consumer[s]," specifically those who subscribe to its video classes. There is no basis to dismiss the Complaint.

Hillsdale strains to read exceptions into the VPPA that simply are not there. In doing so, Hillsdale's Brief in Support of its Motion to Dismiss (ECF. 10, "Mtn.") ignores how the statute has been interpreted by the majority of courts around the country, including this Court. Contrary to Hillsdale's suggestion, the VPPA does not: (1) exempt non-profits from the rules that apply to every other "business;" (2) limit VPPA compliance to a company's primary line of "business," allowing secondary ventures to operate with impunity; (3) exempt companies that—like many online businesses in 2025—only collect data from their "subscribers" rather than monetary fees; (4) exempt universally understood technological identifiers like a Facebook ID from its definition of personally identifiable information; (5) immunize companies that intentionally send confidential customer information to advertising conglomerates without themselves reviewing what they are sending out; or (6) excuse marketing activities from having to comply with the statute.

In addition to being unsupported by the consensus of case law, each of these alleged exceptions would undermine the simple and singular purpose of the VPPA: to prevent customers' private information from being circulated to third parties without the customers' permission.

Hillsdale's arguments also ignore significant allegations in the Complaint about how its online college business really operates and generates income and how a Facebook ID can identify people more precisely than their own name. Ultimately, Hillsdale's motion is wrong on the facts and the law and should be denied.

## ARGUMENT

### I. <u>The Complaint Properly Alleges All Elements of a VPPA Violation</u>.

#### A. <u>Hillsdale College is a Video Tape Service Provider</u>.

##### 1. <u>Hillsdale College Online is a Business Distributing Videos</u>.

Hillsdale argues that it is not a "video tape service provider" under the VPPA. In doing so, it improperly ignores a squarely contrary decision from this Court. This Court already has rejected the contention that a company like Hillsdale cannot be classified as a "business" under a similar statutory definition. *Krassick v. Archaeological Inst. of Am.*, 2022 WL 2071730, at *6 (W.D. Mich. June 9, 2022) (Jarbou, J.). There, this Court considered a Michigan privacy statute analogous to the VPPA, Mich. Comp. Laws § 445.1712, which prohibits entities that sell, rent, or lend books or video recordings from disclosing lists of what material their customers obtained to third parties without the customers' permission. *Id.* at 1. Defendant—the Archaeological Institute of America—attempted to escape liability for selling customer reading lists to data aggregators by arguing that it was organized as a nonprofit. *Id.* at 1, 5. Relying on *identical* statutory language as Hillsdale here, the Institute argued that its circulation of archaeological literature did not qualify as being "engaged in the business" of circulating literature. *Id.* at 5. This Court rejected that argument, holding that nonprofits that create and distribute media are "engaged in the business" of doing just that. *Id.* at 8.

In making that finding, this Court rejected the exact arguments that Hillsdale advances here. Hillsdale's positions center on the alleged plain meaning of the term "business." *See* Mtn. at PageID.58–60. But in *Krassick*, this Court already rejected the very cherry-picking of portions of dictionary definitions about certain businesses generating profits that Hillsdale tries to advance here. 2022 WL 2071730, at 5–6. While many businesses generate profits, doing so is not a necessary component of being a business. *Id.* Dictionary definitions—including several cited by Hillsdale (*See* Mtn. at PageID.58–59)—reflect this reality: "[s]ome definitions include a profit motive and some do not. Some merely require a motive to obtain a pecuniary benefit or a motive to sustain the 'livelihood,' or existence, of the enterprise." *Krassick*, 2022 WL 2071730, at 5–6. (citations omitted).[1]

This Court's analysis of the phrase "engaged in the business of" in *Krassick* applies equally to the meaning of the identical phrase in the VPPA. Indeed, a federal court already has cited *Krassick* to uphold a VPPA claim against a nonprofit distributing healthcare videos. *Manza v. Pesi, Inc.*, 2025 WL 1445762, at *2 (W.D. Wis. May 20, 2025) (*citing Krassick*, 2022 WL 2071730, at *6) (also noting that the dictionary definitions of business include "activities for profit *or* livelihood.") In *Krassick*, this Court also reviewed the construction of several federal statutes and concluded that "when Congress intended 'engaged in the business' to require a profit motive, it expressly stated as much." *Krassick*, 2022 WL 2071730, at *7. So Congress' decision to use the phrase "engaged in the business of" without language about profits afterwards in the VPPA, means that the statute is not limited to profit-generating activities. *Id.*

[1] While *Krassick* also discusses "transactions" (*id.* at 5), its larger point about sustaining an enterprise shows that "transactions" cannot be read to narrowly focus solely on profit-generating activity.

Hillsdale cites zero cases holding that nonprofit organizations are not businesses. Its cases merely discuss "profits" as part of expanding the limits of what constitutes a business to include new areas of commerce where, *inter alia*, profits are being pursued in different but familiar ways. Specifically:

- *Comm'r v. Groetzinger*, 480 U.S. 23 (1987) held that a professional gambler's winnings were considered business income under 26 U.S.C.A. § 162 in the tax code. *Id.* 33. It expressly "caution[ed] that … our interpretation of the phrase 'trade or business' is confined to the specific sections of the [Tax] Code at issue here. We do not purport to construe the phrase where it appears in other places." *Id.*
- *Loc. No. 499, Bd. of Trs. of Shopmen's Pension Plan v. Art Iron, Inc.*, 117 F.4th 923 (6th Cir. 2024) and *Connors v. Incoal, Inc.*, 995 F.2d 245 (D.C. Cir. 1993) merely considered whether the Employment Retirement Income Security Act should apply to new types of ownership structures.
- *United States v. Day*, 476 F.2d 562 (6th Cir. 1973) held that a small unlicensed gun seller cannot use the illegality of its practices to avoid complying with regulations on gun-selling business.

None of these cases indicate that the plain meaning of business excludes nonprofits. Nor would such a conclusion be tenable as a linguistic matter. The phrase "engaged in business" is routinely used by Michigan courts to describe the activities of nonprofits. *See, e.g.*, *Mitchell Fam. Plan. Inc. v. City of Royal Oak*, 335 F.Supp. 738, 739 (E.D. Mich. 1972) (describing "a non-profit corporation engaged in the business of disseminating information in regard to family planning, including information regarding abortion"); *Ensley v. Associated Terminals*, 304 Mich. 522, 524

(1943), *overruled on other grounds by Am. Fed'n of State, Cnty. & Mun. Emps.*, 457 Mich. 74 (1998) ("a nonprofit corporation engaged in the business of operating a truck freight terminal").

Segregating nonprofits from other businesses would not make logical sense either. There are entities "organized as a non-profit organization, [like] the N[ational] C[ollegiate] A[thletics] A[ssociation] and its member institutions [who] are, when presenting amateur athletics to a ticket-paying, television-buying public, engaged in a business venture of far greater magnitude than the vast majority of 'profit-making' enterprises." *Hennessey v. Nat'l Collegiate Athletic Ass'n*, 564 F.2d 1136, 1149 (5th Cir. 1977). The proper method for identifying a business is by its activities, not its organizational structure. *McGriff By & Through Norwest Cap. Mgmt. & Tr. Co. v. U.S. Fire Ins. Co.*, 436 N.W.2d 859, 863 (S.D. 1989) (rejecting the argument that a nonprofit operating a bar is not "engaged in the business" of serving drinks because of its nonprofit status); *see also Steel Joist Institute, Inc. v. J. H. Mann, III, Inc.*, 171 So.2d 625, 627–28 (Fla. 2D DCA 1965) ("A non-profit corporation's business is whatever functions it has been organized to perform."). Which means the only question here is whether Hillsdale's organized functions include distributing video content.

They most certainly do. Hillsdale runs an online course website located at https://online.hillsdale.edu. *See* Compl. at PageID.13 ¶ 50. That website offers its own course catalog, with dozens of courses and hundreds of videos.[2] It has its own sign-up process specifically for online courses. *See* Compl. at PageID.13 ¶ 53. The one and only function of the online.hillsdale.edu subdomain is to provide video content. The fact that Hillsdale is a nonprofit does not change the fundamental character of these operations. Those operations also generate revenue that helps "sustain the livelihood, or ongoing existence, of the [nonprofit] organization"

[2] https://online.hillsdale.edu/courses.

(*Krassick*, 2022 WL 2071730, at *8) by driving sales of books for the online courses, recordings of them, as well as promoting its paid distance learning programs and driving donations (*See* Compl. at PageID.12 ¶ 44–47). Hillsdale's decision to buy Pixel-supported advertisements to drive traffic to these online courses underscores that they are part of its business. *See* Compl. at PageID.12 ¶ 43.

Hillsdale argues that its decision not to sell videos removes these operations from the realm of a VPPA business. But that is not a plausible interpretation of the VPPA. Section 2710(a)(4) defines a video tape service provider as an entity engaged in the "rental, sale, *or delivery* of prerecorded video." (emphasis added). Bedrock cannons of statutory interpretation require that the term "delivery" be read to have a unique meaning, beyond what is already included in the statute by the terms "sale" and "rental." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017). So "delivery" must include the free provision of videos. *See id.* Which is conduct that has historically been regulated by the VPPA. *See, e.g.*, *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *3 (N.D. Cal. July 20, 2023) ("video-hosting websites need not charge fees to viewers to qualify as video tape service providers under the VPPA"); *Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340, n.2 (N.D. Ga. 2022) (allowing VPPA claim against free medical advice site). Hillsdale's financial arrangements do not alter the fundamental character of its conduct.

**2. Hillsdale Cannot Duck VPPA Liability By Pretending That Its Online Video Offerings Are An Ancillary Appendage.**

Hillsdale disingenuously argues that its subscriber-only, online-video content is merely peripheral or incidental to its business' primary activity. *See* Mtn. at PageID.58. That is incorrect factually and legally.

Hillsdale College Online is not peripheral. Hillsdale refers to its online users as "students," promotes that language on its website, and claims to have attracted over 1.7 million students

through its online courses, far exceeding its current undergraduate enrollment of 1,573 students.[3] In addition, Hillsdale does not accept federal or state funding and instead relies heavily on private donations from "thousands of citizens" to sustain its operations.[4]

One way Hillsdale obtains these donations is through its online course platform. When accessing Hillsdale's free online courses, users are actively encouraged to donate (as showcased at the top of the screen when navigating through videos) with Hillsdale stating that it offers free courses but "count[s] on the generosity of people like you" to continue doing so.[5] The donation prompts are directly tied to the video content, underscoring that these subscriber-only, online video courses are not incidental, but rather central to Hillsdale's fundraising model, public mission, and business as a whole.

---

[3] *See Hillsdale College Online Curriculum Attracts 1.7 Million Students*, Hillsdale College, https://www.hillsdale.edu/news-and-media/press-releases/hillsdale-college-online-curriculum-attracts-1-7-million-students/; *see also College Profile*, Hillsdale College, https://www.hillsdale.edu/about/college-profile/ (last accessed August 7, 2025). Hillsdale has requested that the Court consider the contents of its website as part of the Complaint and in connection with its Motion to Dismiss. *See* Mot. to Dismiss at 1 n.1; *see A.G. by & Through N.G. v. Cmty. Ins. Co.*, 363 F. Supp. 3d 834, 839 n.2 (S.D. Ohio 2019) (stating that the court "may properly consider" the contents of a website in connection with a motion to dismiss when the website is referred to in the complaint and is central to the claims contained therein) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)). Plaintiffs make the same request here.

[4] *See* Compl. at PageID.12 ¶ 47; see also *Making A "Freeing" Education Affordable*, Hillsdale College, https://www.hillsdale.edu/hillsdale-blog/admissions-financial-aid/making-a-freeing-education-affordable/#:~:text=Hillsdale's%20refusal%20of%20all%20federal,independently%20of%20burdensome%20government%20regulations (last accessed August 7, 2025).

[55] *See* Compl. at PageID.12 ¶ 47; see *You can help educate America*, Hillsdale College, https://secured.hillsdale.edu/hillsdale/support-online-courses/?_gl=1*u5q3gv*_gcl_au*MTkzODQwOTYxLjE3NTMxOTc0MjU.*_ga*MTM5ODM2OTY1MS4xNzUzMTk3NDI2*_ga_FBJP6CFLDM*czE3NTMxOTc0MjUkbzEkZzEkdDE3NTMxOTc1NTIkajIyJGwwJGgw (last accessed August 7, 2025).

In short, the notion that Hillsdale's subscriber-only, online video courses are merely peripheral or incidental to Hillsdale's business is a fiction.

Hillsdale also relies on outlier decisions that do not even support its position. Several courts, largely in California, have held that the use of online video advertisements to promote the sale of consumer-packaged goods does not turn a company into a video tape service provider. Regardless of the propriety of those decisions, they have no relevance here.

Those decisions arise from situations where the video advertisements are "ancillary to Defendant's true business purposes" of retail sales. *See* Mtn at PageID.63 (internal quotation omitted). "[C]ourts have [only applied Defendant's logic] where no reasonable inference could be made that the videos in question were 'more than peripheral' to the defendant's business." *Ballard v. Insomniac Holdings, LLC*, No. 2025 WL 1696558, at *3 (N.D. Cal. June 17, 2025). "[T]hese are primarily retail companies that use videos incidentally to sell their retail goods—not companies for whom the videos are the product." *Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023).

That is the opposite of Hillsdale's situation, where it has a subdomain fully devoted to delivering subscriber-only video content. *See* Compl. at PageID.13 ¶ 50. Those videos are not advertisements for some other product, they *are* the product. *See Sellers,* 2023 WL 4850180, at *6; *Mata v. Zillow Grp., Inc.*, , 2024 WL 5161955, at *3 (S.D. Cal. Dec. 18, 2024). Underscoring this, Hillsdale pays for advertisements to drive users to its free online courses. *See* Compl. at PageID.12 ¶ 43. These courses also generate revenue totally independent of the rest of the college when students buy books for the online courses or recordings of them or make donations to support the spread of online instruction. *See* Compl. at PageID.12 ¶¶ 44–45, 47. That is more than enough to establish Hillsdale's status as a video tape service provider.

The fact that Hillsdale also has an in-person college (with a separate subdomain) does not alter this analysis. In *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150 (S.D.N.Y. 2023), the Court properly focused the VPPA analysis on the videos available at Today.com rather than all video products distributed by defendant NBC (or the full scope of NBC's business ventures). *Id.* at 156–57. The Court also found that the fact that Today.com had certain live broadcasts did not relieve it of the duty to make the prerecorded videos portion comply with the VPPA. *Id.* As the table below demonstrates, countless other cases underscore that the mere existence of a larger non-video-related operation under a defendant's corporate umbrella does not render the VPPA inapplicable to its other functions.

| **Primary Business** | **Case Denying Motion to Dismiss VPPA Claim** |
|---|---|
| Print Newspaper | *Ambrose v. Bos. Globe Media Partners LLC*, , 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022);<br>*Belozerov v. Gannett Co.,* 646 F. Supp. 3d 310, 313–14 (D. Mass. 2022) |
| Concerts | *Ballard*, 2025 WL 1696558, at *3 |
| Sports Media | *Sellers,* 2023 WL 4850180, at *6 |
| Television Screens | *In re Vizio,* 238 F. Supp. 3d at 1222 |
| Real Estate Listings | *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *3 (S.D. Cal. Dec. 18, 2024) |
| Social Media | *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) |

Ultimately, Hillsdale's positions are both incorrect and not supported by the cases it cites.

### B. Plaintiffs are Consumers Under the VPPA Because They are Subscribers of the Services Offered by Hillsdale.

Hillsdale argues that Plaintiffs cannot state a claim under the VPPA because Plaintiffs are not subscribers of Hillsdale's services, and, therefore, are not consumers. *See* Mtn. at PageID.65-73. Hillsdale's argument is without merit.

#### 1. An Exchange Of Money Is Not Required To Be A Subscriber.

To state a claim under the VPPA, the plaintiff must be a consumer of goods or services from a video tape service provider. *See* 18 U.S.C. § 2710(a)(1). The statute defines a consumer

as "any renter, purchaser, or *subscriber* of good or services from a video tape service provider." *Id*. Hillsdale argues that to be a subscriber, one must make "payments to access audiovisual materials for a defined period." *See* Mtn. at PageID.67. But nowhere in the statute does it say that to be a subscriber, one must make payments. Instead, Hillsdale contorts and adds to the language of the statute to fit its argument. Interpretation of statutes is not a matter of contortion or addition. As the Sixth Circuit recently reminded us, "a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Salazar v. Paramount Glob.*, 133 F.4th 642, 650 (6th Cir. 2025) (quoting *W. Virginia v. Envtl. Prot. Agency*, 597 U.S. 697, 721 (2022)).

The Sixth Circuit has not yet weighed in on the requirements to qualify as a subscriber under the VPPA. But other Circuits have.

The Eleventh Circuit held that "payment is not a necessary element of subscription" and explained that the "term 'subscriber' is not preceded by the word 'paid' in § 2710(a)(1) of the VPPA, and there are numerous periodicals, newsletters, blogs, videos, and other services that a user can sign up for (i.e., subscribe to) and receive for free." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015) (citing *In re Hulu Privacy Litig.*, 2012 WL 3282960, at *8 (N.D. Cal. 2012)).

The First Circuit also found that monetary payment is not a requirement to be a subscriber under the VPPA. In *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487 (1st Cir. 2016), the First Circuit answered the following question in the negative: "So the question is posed: Should we read the statutory term "subscriber" as incorporating monetary payment as a necessary element, or rather as encompassing the broader common definition of the term?" *Id.* The First Circuit, in reading the term "subscriber" in context and with a view to its place in the overall

statutory scheme noted that "if the term 'subscriber' required some sort of monetary payment, it would be rendered superfluous by the two terms preceding it[,]" those words being "renter" and "purchaser." *Id*.

And just last year, the Second Circuit also held that "someone doesn't have to spend money to be a VPPA 'subscriber.' Otherwise, the term 'subscriber' would be rendered superfluous by the terms 'purchaser' and 'renter' in the definition of 'consumer.'" *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 552 (2d Cir. 2024). The Second Circuit explained how one could be a subscriber without being charged monetarily: "It's also easy to imagine subscriptions that don't require monetary payment. Someone can, for example, subscribe to a YouTube channel by signing into a YouTube account (which requires no monetary payment) and clicking the 'subscribe' icon on a content creator's channel." *Id*.

While the foregoing Circuits have tackled head-on the issue of whether monetary payment is required to be a subscriber under the VPPA, Hillsdale's motion to dismiss tellingly ignores those opinions.

Following the Sixth Circuit's instruction that we read the words of a statute "in their context and with a view to their place in the overall statutory scheme," *Paramount Glob.*, 133 F.4th at 650, there is no indication that the VPPA requires payment to be considered a subscriber. If legislators had intended payment to be a condition precedent, they could have included "paid subscriber" rather than "subscriber" in the definition of "consumer."

Accordingly, the Court should find Hillsdale's argument for dismissal to be without merit.

### 2. <u>Plaintiffs Have Provided Sufficient Consideration To Be Subscribers</u>.

Hillsdale next argues that Plaintiffs have failed to state a claim under the VPPA because they have failed to sufficiently allege that they are "subscribers" under the statute. *See* Mtn. at PageID.71-73. Hillsdale is wrong again.

The Sixth Circuit has not directly tackled this issue yet. But the First, Second, and Eleventh Circuits in the cases cited above have. And their guidance should be enough here.

In *Yershov*, the First Circuit held that the plaintiff there sufficiently alleged enough to be considered a "subscriber" under the VPPA. 820 F.3d at 498. The Plaintiff in *Yershov* installed the USA Today Mobile App on his Android device. *Id*. at 484. The *Yershov* Court explained that "to use the App, [the plaintiff] did indeed have to provide [the defendant] with personal information, such as his Android ID and his mobile device's GPS location at the time he viewed a video, each linked to his viewing selections." *Id*. at 489. The Court noted that while the plaintiff "paid no money, access was not free of a commitment to provide consideration in the form of that information, which was of value to [the defendant]." *Id*. The Court further found that by installing the App on his phone, such that he had "seamless access to an electronic version of *USA Today*[,]" the plaintiff "established a relationship with the defendant that [was] materially different from what would have been the case had *USA Today* simply remained one of millions of sites on the web that [the plaintiff] might have accessed through a web browser." *Id*.

In *Nat'l Basketball Ass'n*, the Second Circuit held that an individual who alleged that he provided the defendant with valuable personal information such as his "email address," "IP address," and "cookies associated with his device" when signing up for the defendant's newsletter sufficiently pleaded that he was a "subscriber" under the VPPA. 118 F.4th at 552. The Court there

explained that the information the plaintiff provided "was not insignificant" and that, by receiving that information, the defendant:

- "learned how to directly reach out to [him]";
- "discovered where his device was"; and
- "gained access to additional information stored in any cookies on his device." *Id*.

The Court noted that those "tools increased the [defendant's] potential to urge [the plaintiff] to visit [the defendant's website] and watch videos on it, making the [defendant's] relationship with him distinct from its relationship" with other individuals who had not signed up for the newsletter. *Id*.

Courts generally have found no subscriber relationship in situations where the plaintiff provides no information to the video tape service provider. For example, in *Ellis*, the Eleventh Circuit held that an individual who "simply watched video clips on [an] app, which he downloaded for free" did not qualify as a subscriber under the VPPA. *Ellis*, 803 F.3d at 1257. The Court there explained that "downloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app." *Id*. The Court noted that the "downloading of an app . . . is the equivalent of adding a particular website to one's internet browser as a favorite, allowing quicker access to the website's content. *Id*.

Plaintiffs here sufficiently allege the existence of a relationship with Hillsdale to be "subscribers" under the VPPA. Plaintiffs allege that they registered for "an online.hillsdale.edu account" so that they could view video classes offered by Hillsdale. *See* Compl. at PageID.13,18,20,22. To register for that account, Plaintiffs had to provide Hillsdale with their first

and last names and an email address.[6] That information is valuable to Hillsdale. With that information, at the very least, Hillsdale has learned how to directly reach out to Plaintiffs. By providing that information to Hillsdale in exchange for access to its library of video courses, Plaintiffs changed their relationship with Hillsdale from that of a person surfing the internet, *i.e.* not a subscriber, to one where Hillsdale has received value, *i.e.* subscriber information, from Plaintiffs in exchange for access to Hilldale's library of video courses.

Plaintiffs here are different from the plaintiffs in *Ellis* because those plaintiffs did not provide any information to the defendant, instead, they only downloaded an app. *Ellis*, 803 F.3d at 1257. Plaintiffs are more similarly situated to the plaintiffs in *Yershov* and *Nat'l Basketball Ass'n*, because they provided valuable information to the defendants in exchange for access to the services offered.

Hillsdale has not offered any reason why the Court should disregard the guidance offered above by other Circuits. That is because those Circuits' analysis on this issue is sound.

In light of the foregoing, Plaintiffs have sufficiently pleaded that they are "subscribers," and thereby "consumers" under the VPPA.

---

[6] *See*
https://hillsdalecollegeportalprod.b2clogin.com/hillsdalecollegeportalprod.onmicrosoft.com/b2c_1a_authentication/oauth2/v2.0/authorize?client_id=7036b111-7c18-4be3-805c-0c977a8a4f77&scope=openid%20profile%20offline_access&redirect_uri=https%3A%2F%2Fonline.hillsdale.edu%2Fauth%2Fredirect&client-request-id=740be716-d22d-4b05-a890-0021593eb34c&response_mode=fragment&response_type=code&x-client-SKU=msal.js.browser&x-client-VER=2.39.0&client_info=1&code_challenge=KlahNzKKZerjvAXYmZCbqaoodHQHdrGVdaDqHLW0vh4&code_challenge_method=S256&nonce=3b0855fe-836a-454a-8027-bcff821a506b&state=eyJpZCI6IjIzNzMxMTcwLWIzMzUtNGEwNi1hODI0LWJiYWM5NWMxM2UwYyIsIm1ldGEiOnsiaW50ZXJhY3Rpb25UeXBlIjoicmVkaXJlY3QifX0%3D&authenticationContext=signup (last accessed August 4, 2025). Plaintiffs again request that the Court consider the contents of the foregoing link. Plaintiffs make the same request here.

### C. **The Information Disclosed was Personally Identifiable Information.**

To state a claim under the VPPA, Plaintiffs must allege that their personally identifiable information ("PII") was disclosed. *See* 18 U.S.C. § 2710(b)(1). The VPPA provides that "personally identifiable information includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider . . ." 18 U.S.C. § 2710(a)(3). Hillsdale argues that Plaintiffs have failed to state a claim here because they have failed to allege that their personally identifiable information was disclosed. *See* Mtn. at PageID.73-78. Hillsdale's argument is without merit.

At bottom, Plaintiffs allege that when they accessed Hillsdale's video courses via their subscription to its website, online.hillsdale.edu, their Facebook ID ("FID") and the specific subscriber-only video courses they viewed were disclosed to Meta (Facebook) via code. *See* Compl. at PageID.13-19. An "FID is a unique sequence of numbers linked to that individual's Facebook profile. Entering 'facebook.com/[FID] into a web browser returns that Facebook profile of that particular person. An FID thus identifies a specific person more precisely than a name." *See* Compl. at PageID.9 ¶ 28. To illustrate the point, Plaintiffs use Meta's founder, Mark Zuckerberg, as an example, and allege that "Mark Zuckerberg's FID is reportedly the number '4,' so logging into Facebook and typing www.facbeook.com/4 in the web browser takes one to Mark Zuckerberg's Facebook page, www.facebook.com/zuck, and additional personally identifiable information contained therein. *See* Compl. at PageID.9 ¶ 29.

Hillsdale argues that the transmittal of Plaintiffs' FID and video viewing history does not qualify as "personally identifiable information" because that information would not enable an "ordinary person" to identify the consumer, the consumer's video-watching history, and the connection between the two. *See* Mtn. at PageID.74. Hillsdale's argument is wrong.

The Sixth Circuit in *Paramount Glob.* provided some insight into the VPPA's meaning of "personally identifiable information." *Paramount Glob.*, 133 F.4th at 652. Remember, the VPPA provides that "personally identifiable information *includes* information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider . . . ." 18 U.S.C. § 2710(a)(3) (emphasis added). The Sixth Circuit explained that the use of the word "includes" in the meaning of "personally identifiable information" means that the language following the word "includes" is illustrative, and not exhaustive:

> It's far from the most natural reading to see the term "personally identifiable information" as limiting because the statute defines it with the term "includes"—unlike the other definitions which use the word "means." 18 U.S.C § 2710(a)(3). And when a "definition is introduced with the verb 'includes' instead of 'means' ... it makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive."

*Id*. at 652 (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012)). And the Sixth Circuit made plain that, based on the foregoing, "personally identifiable information" does not mean that such information must "identify a person as having requested or obtained specific video materials or services." *Paramount Glob.*, 133 F.4th at 652 (cleaned up) (quotation omitted). Accordingly, the way to read the VPPA, is that "personally identifiable information" is information that *can be* used to identify a person as having requested or obtained specific video materials or services from a video tape service provider.[7] And the VPPA is devoid of any language requiring

[7] The First Circuit has reached the same conclusion. *See, e.g.*, *Yershov*, 820 F.3d at 486 (1st Cir. 2016) ("the language reasonably conveys the point that PII is not limited to information that explicitly names a person. . . . [T]he language Congress did use to define PII begins with the word includes. 18 U.S.C. § 2710(a)(3). That word normally implies that the proffered definition falls short of capturing the whole meaning. . . . Many types of information other than a name can easily identify a person. Revealing a person's social security number to the government, for example, plainly identifies the person."); *see also Manza v. Pesi, Inc.*, 2025 WL 1445762, at *5 (W.D. Wis. May 20, 2025) ("Under the plain language of the statute, it does not matter who is doing the identifying or how they are doing it, so long as the video tape service provider knows that the information *can be used* by a third party to identify a specific person.") (emphasis added).

that the arbiter of what constitutes "personally identifiable information" be that of an "ordinary person."[8]

More to the point, a court in this circuit, less than a month ago and based on *Paramount Glob.*'s instruction above, found that an FID does indeed constitute "personally identifiable information." *Haines v. Cengage Learning, Inc.*, 2025 WL 2045644, at *3 (S.D. Ohio July 22, 2025). In making that finding, the Court explained:

> An individual need only include the Facebook ID in the Facebook URL to pull up a user's entire profile, which contains the name and other identifiable information for that user. And, the Sixth Circuit has clearly stated that it breaks with the Second and Seventh Circuits' approach, and finds that personally identifiable information does not always have to identify a person as having requested or obtained specific video materials or services for purposes of a VPPA claim. *Paramount Glob.,* 133 F.4th at 651-52. Thus, the Court agrees with the Report's finding that a Facebook ID constitutes personally identifiable information.

*Haines*, 2025 WL 2045644, at *3 (cleaned up). *Haines* went so far as to explain that "the vast majority of federal and district and circuit courts . . . have held" that an FID constitutes PII. *Id.*[9] There is no reason why the Court here should reach any different conclusion.[10]

---

[8] The case of *Manza,* 2025 WL 1445762 contains a tremendous analysis on why the "ordinary person" analysis proposed by Hillsdale here should be rejected as nothing more than a "judicial construct," which "creates a loophole that undermines the basis purpose of the VPPA and is not supported by the VPPA's text. *Id*. at *9.

[9] *See, e.g.*, *In re Hulu Privacy Litig.*, 2014 WL 1724344, at *14 (N.D. Cal. 2014) ("The Facebook USER ID is more than a unique, anonymous identifier. It personally identifies a Facebook user. That it is a string of numbers and letters does not alter the conclusion. Code is a language, and languages contain names"); *Belozerov v. Gannett Co., Inc.*, 646 F. Supp. 3d 310, 314 (D. Mass. 2022) ("A Facebook ID meets the broad definition of PII in this circuit."); *Li v. Georges Media Group LLC*, 2023 WL 7280519, at *4 (E.D. La. 2023) ("many courts have found that FIDs constitute PII under the statute. At the very least, Meta can easily 'link' the FID to a specific user. Therefore, Richard has sufficiently plead that Defendant's FID disclosure constitutes sharing of PII."); *Manza*, 2025 WL 1445762, at *9 ("the court concludes that ID numbers uniquely associated with a specific customer qualify as PII under the VPPA when they are paired with the names of videos the customer obtained from the defendant.").

[10] Even if the Court here did employ the "ordinary person" approach suggested by Hillsdale, the Ninth Circuit has recognized that a "Facebook link or an email address may very well readily

Plaintiffs have alleged that their FID and the exact title of the video they watched at online.hillsdale.edu was disclosed to Meta. *See* Compl. at PageID.15-19. That qualifies as "personally identifiable information" under the VPPA. *Haines*, 2025 WL 2045644 at *2; *Manza v. Pesi, Inc.*, 2025 WL 1445762, at *5. Accordingly, Plaintiffs have stated a claim under the VPPA.

### D. Hillsdale Uses a Pixel On Its Website Which Discloses Personally Identifiable Information.

Defendant's disclosure arguments ignore core allegations in the Complaint and do not even pretend to be rooted in case law. The Complaint alleges that Hillsdale installed the Pixel, configured what information it should gather, retained control of what information it gathers, maintains it, and has professional staff that monitors certain data it gathers. *See* Compl. PageID. at 11–12, 14 ¶¶ 39, 41, 43, 58–61, 63. That conduct caused personally identifiable information to be disclosed to Meta and other third-party trackers. That disclosure in violation of the VPPA is directly attributable to Hillsdale. *See, e.g., Sellers v. Bleacher Rep., Inc.*, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023) ("the complaint alleges that Bleacher Report transmits the information to Facebook by incorporating the pixel into its website"); *Belozerov*, 2022 WL 17832185, at *4 (same).

Defendant's arguments, by contrast, are not rooted in case law. Section I(D) of its brief cites only two cases, neither of which applies here. Defendant argues that Plaintiffs' conduct caused the disclosure, citing *Mollett v. Netflix, Inc.,* 795 F.3d 1062 (9th Cir. 2015). But that case found that Netflix showing a users' video history and queue to other users of their television does not violate the VPPA. *Id.* 1066–67. That makes sense because users knowingly choose what

---

enable an 'ordinary person' to identify an individual." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 986 (9th Cir. 2017).

devices to install Netflix on (e.g. a family room TV), know who has access to that device, and would understand and appreciate the disclosures that could result from installing Netflix in a shared space. *Id.* That is not comparable to the operation of the Pixel here, because users did not know that it—or anyone—was tracking their movements.

To bridge this gap, Hillsdale argues that knowledge should be imputed from users' acceptance of "Facebook's Privacy Policy and Cookie Policy." There are at least five problems with this argument. First, it does not meet any of the requirements for informed written consent under the VPPA. *See* § 2710(b)(2) (requiring, for example, contemporaneous or time-restricted consent). Second, under any standard for consent or knowledge, the policy does not provide sufficient notice. It only tells users that Meta "receives information" including "information about [their] activity" (*See* Mtn. at PageID.79–80), with no indication of how much information is transferred, much less that a user's entire browsing activity is being tracked in violation of federal law. Third, Hillsdale provides no indication that Plaintiffs read or were even asked to agree to that policy document. Fourth, Hillsdale cites no law allowing a court to impute awareness and consent to illegal conduct from one sentence in a long corporate policy without any indication of actual knowledge of the information in that sentence. Fifth, Hillsdale only cites one version of that policy, which may or may not have been in effect when Plaintiffs made their Facebook accounts or when the VPPA violations occurred.

Other than *Netflix*, the only other case Hillsdale cites in support of its argument is *Lebakken*, 640 F. Supp. 3d 1335 which uses the phrase "conscious transmission of private information." *Id.* at 1342. But that phrase only requires that the website (Hillsdale) knows that a third party can connect the video records with the individuals who watched them. *Id.* Plaintiffs have properly alleged that here Hillsdale set up the Pixel, has professional staff monitoring data

from it, and knew or should have known how easy it is to identify a user based on their Facebook ID. *See* Compl. at PageID. 9, 11, 14 ¶¶ 28–30, 39, 58–59. That is more than sufficient to meet the standard.

Hillsdale also argues something else though, which is not rooted in *Lebakken* or any other case. Hillsdale contends that it could not access Plaintiffs' Facebook IDs.[11] But that is of no moment when Hillsdale's conduct directly results in a disclosure. Hillsdale's Pixel is the software transmitting that information to Meta. *Czarnionka*, 2022 WL 17069810, at *3. Hillsdale's software sends the information, and Hillsdale would have enough information in the transmission itself to connect a user with their video-watching history. *Golden*, 688 F. Supp. 3d at 158 (S.D.N.Y. 2023). Additionally, no part of the VPPA requires that the discloser review the information disclosed, much like the video store that sold Robert Bork's video rental history may not have perused it before sending it to the Washington Post. The VPPA does not require that the party transmitting the personally identifiable information review the personally identifiable information, and it would be improper to rewrite the statute to breathe in such a requirement that the drafters of the statute did not see fit to include. Rather, the plain language of the VPPA provides for a simple analysis of whether a video service provider improperly disclosed information to a third-party. Plaintiffs have properly pleaded that standard here.

**II. Hillsdale's Disclosures Are Not Protected By The Ordinary Course of Business Exception.**

The ordinary course of business exception does not protect disclosures to third-party advertisers, particularly on the scale of the information that Hillsdale transferred to Meta.

---

[11] Hillsdale also raises partial arguments about jumbled URLs and separate messages. Mtn. at PageID.81. Those arguments do not apply to all transmissions and ignore specific allegations about how PII is transmitted in one recognizable package in a manner that clearly violates the VPPA. *See* Compl. at PageID.15–17 ¶¶ 66–81.

Section 2710(a)(2) defines the ordinary business exception as "mean[ing] only debt collection activities, order fulfillment, request processing, and the transfer of ownership." As Hillsdale's own authority recognizes, the term is "narrowly defined." *Daniel v. Cantrell*, 375 F.3d 377, 382 (6th Cir. 2004). The only authority that Hillsdale cites for its marketing argument is a few stray words in a quote from legislative history contained in dicta from that case. *Id.*[12]

Those words are not authority in this case for three reasons. First, *Daniel* did not endorse the term "marketing." That term merely appeared in a quoted list of items from legislative history used to make a larger point. *Id.* at 382. It does not appear in any of the court's own words. Second, the committee report quoted in *Daniel*, was discounted by one of the other cases cited in this section of Hillsdale's brief, based on the Supreme Court's admonitions about committee reports not being reflective of legislative intent. *Sterk v. Redbox Automated Retail*, LLC, 770 F.3d 618, 624 (7th Cir. 2014) (*citing Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005)).[13] Third, the *Daniel* court was affirming the dismissal of a time-barred VPPA claim pursued *pro se* by a convicted child molester whose video rental history was acquired by law enforcement. *Id.* at 379. The court had no facts about marketing or ordinary business operations before it, nor briefing on those topics, and would not have been seeking to decide that issue. It should come as no surprise, therefore, that numerous courts have rejected Hillsdale's argument.

In this Circuit, *Collins v. Toledo Blade*, 720 F. Supp. 3d 543 (N.D. Ohio 2024) found that the ordinary course of business exception should be read narrowly under *Daniel* and does not

---

[12] While *Daniel* also discusses marketing in a separate hypothetical as well, that discussion is about the § 2710(B)(2)(D) exception, which Hillsdale's motion does not raise and implicitly concedes that it could not satisfy for lack of consent. *Id.*; Mtn. at PageID.83; *see also* Compl. at PageID. 18 ¶¶ 92-93 (confirming that no qualifying consent was obtained). So that portion of *Daniel* has no relevance to the § 2710(B)(2)(E) ordinary course of business exception argued here.

[13] The remainder of that case is distinguishable because it considered customer service functions, not marketing. *Id.*

include marketing. *Id.* 555–56. The propriety of that outcome is especially clear here, because complex internet tracking and analytics to optimize advertising effectiveness are simply not part of the ordinary course of operating a business. *In re Hulu Privacy Litig.*, 2012 WL 3282960, at *7; *Louth v. NFL Enters. LLC*, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022); *Saunders v. Hearst Television, Inc.*, 711 F. Supp. 3d 24, 32 (D. Mass. 2024). As explained in the Complaint, Hillsdale is fully capable of providing online courses to viewers without surreptitiously tracking their movements. *See* Compl. at PageID.19 ¶ 96. So that tracking is not part of the ordinary course of its online education business.

Moreover, even if Hillsdale could invoke some portions of the exception, it would not excuse the actual conduct here. Hillsdale did not simply provide Meta with the data necessary to convince visitors to start taking courses. It gave Meta information about users that were already customers, including detailed personal information that is irrelevant to informing them about new course offerings. *See* Compl. at PageID.15, 23 ¶ 64, 137. It also knew Meta would share that data with other third parties who play no role in the ordinary course of Hillsdale's business. *See* Compl. at PageID.10,13 ¶ 36, 56. Hillsdale also shared the same data with similar third parties like Google, Double Click, X, Bing, and Outbrain that are not addressed in Defendant's motion. *See* Compl. at PageID.11 ¶ 37–38. As follows, the ordinary course of business exception cannot possibly excuse the conduct alleged in the Complaint.

In light of the foregoing, Plaintiffs request that the Court deny the Motion to Dismiss.

## III. <u>Amendment Would Not Be Futile</u>.

The Motion to Dismiss should be denied. But, if it is granted, Plaintiffs request that the dismissal be *without* prejudice and that they be given leave to amend their Complaint. Amendment would not be futile because Plaintiffs can include the allegations necessary to assert a claim under

the VPPA, to the extent this Court finds that Plaintiffs have failed to do so in the Complaint. *See Hall v. Fed. Bureau of Prisons*, 2017 WL 8776823, at *2 (6th Cir. 2017) ("A district court should 'freely' grant a party leave to amend his complaint 'when justice so requires.'") (quoting Fed R. Civ. P. 15(a)).

**WHEREFORE**, Plaintiffs respectfully request that the Court deny the Motion to Dismiss, or, alternatively, if the Court is inclined to grant the Motion to Dismiss, that the Complaint be dismissed without prejudice so that Plaintiffs can include the necessary allegations that the Court may find lacking.

Dated: August 15, 2025

Respectfully Submitted,

By: /s/ Brian Levin

LEVIN LAW, P.A.
Brian Levin
brian@levinlawpa.com
Jacob Polin
jacob@levinlawpa.com
41000 Woodward Ave, Ste 350
Bloomfield Hills, MI 48304
Telephone: (248) 270-7338

DIMOND KAPLAN & ROTHSTEIN, P.A.
Jeffrey B. Kaplan, Esq.
JKaplan@dkrpa.com
Alexander M. Peraza, Esq.
APeraza@dkrpa.com
Nestor Camacho, Esq.
NCamacho@dkrpa.com
2665 South Bayshore Drive, PH-2B
Miami, Florida 33133
Telephone: (305) 374-1920

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains 7,202 words, accounting for only the headings, footnotes, citations, and quotations, as verified by Microsoft Word (Version 2507), and complies with the word limit requirements set forth in LCivR 7.2(b)(i).

By: *<u>/s/ Nestor Camacho</u>*
**DIMOND KAPLAN & ROTHSTEIN, P.A.**