IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

---

STEPHEN ROBERT GOODMAN and CHARLES JM. GREER, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

HILLSDALE COLLEGE,

*Defendant*.

Case No. 1:25-cv-417-HYJ-PJG

Chief Judge: Hala Y. Jarbou
Magistrate Judge: Phillip J. Green

---

**DEFENDANT HILLSDALE COLLEGE'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT AND REQUEST FOR JURY TRIAL**

---

NOW COMES, Defendant Hillsdale College, by and through its attorneys, Eimer Stahl LLP, and for its Amended Answer to the Class Action Complaint of Stephen Robert Goodman and Charles JM Greer:

## I. NATURE OF THE CASE

1. This is a privacy class action against Hillsdale for knowingly disclosing the personally identifiable information of viewers of its online classes in violation of the Video Privacy Protection Act, 18 U.S.C. § 2710, et seq. (the "VPPA").

**RESPONSE:** Defendant admits that Plaintiffs sued under the VPPA regarding Hillsdale College's free online courses. Defendant denies the remainder of the allegations in this paragraph.

2. Hillsdale provides online classes via its website located at online.hillsdale.edu.[1] On this website, it knowingly installed and operates hidden tracking code from third-parties that transmits time-stamped, personally-identifiable records of Plaintiffs' and Class members' personally identifiable information and activities on Hillsdale's website to those third-parties ("Trackers"). These Trackers include code created by Meta Platforms, Inc., ("Meta"), previously known as Facebook which has been termed the Meta Pixel (the "Pixel"). Trackers like the Meta Pixel, send third-parties time-stamped, personally-identifiable records of Plaintiffs and Class members such as a unique and traceable identifier known as their Facebook ID ("FID"), specific video titles, and the videos' URLs identifying specific prerecorded videos each Plaintiff requested or obtained (together, "Personal Viewing Information"). Hillsdale disclosed this information by transmitting it to third-parties like Meta. Hillsdale also knew or should have known that those third-parties, like Meta in turn, upon information and belief, disclosed Plaintiffs' Personal Viewing Information to other businesses as well. Despite knowingly engaging in this conduct, and employing professional staff to manage Hillsdale's marketing of its online classes, including on Meta, Hillsdale failed to advise its website users that it was disclosing their Personal Viewing Information. Hillsdale did not have the informed

[1] *See* https://online-courses-forum.hillsdale.edu/tos ("To use the forum, you must agree to these terms with Hillsdale College, the company that runs the forum.") All references to online.hillsdale.edu are inclusive of subdomains and related domains.

written consent required by law to make those disclosures and its conduct is expressly prohibited by the VPPA.

**RESPONSE:** The allegations contained in this paragraph purport to refer to https://online.hillsdale.edu/. The content of that website speaks for itself, and Defendant denies Plaintiffs' characterizations of that website. The remainder of Paragraph 2 contains legal conclusions to which no response is required. To the extent a response is required, Defendant denies.

3. Plaintiffs are victims of Defendant's misconduct. Hillsdale disclosed their Personal Viewing Information without their consent. Plaintiffs bring this case as a class action, seeking damages and equitable relief on behalf of themselves and all others similarly situated.

**RESPONSE:** Defendant admits that Plaintiffs have brought this case as a putative class action, denies the remainder of the allegations in the paragraph, and further denies that the claims brought by Plaintiffs meet the requirements for class certification.

## II. PARTIES

4. Plaintiff Stephen Robert Goodman is a resident of Long Branch, New Jersey.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

5. Plaintiff Charles JM. Greer is a resident of St. Francis, Wisconsin.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

6. Defendant Hillsdale College is a Michigan Domestic Nonprofit Corporation with its headquarters in Hillsdale Michigan. It is headquartered at 33 E. College Street Hillsdale, Michigan 49242.

**RESPONSE:** Defendant denies the allegations in Paragraph 6 to the extent that Paragraph 6 refers to Hillsdale as "a Michigan Domestic Nonprofit Corporation" and "headquarter[ed]" in Hillsdale, Michigan. Hillsdale College admits that it is a small, private, Christian, classical liberal arts college that is organized as a Michigan domestic nonprofit corporation and that the main address of the college campus is 33 E. College Street Hillsdale, Michigan 49242.

## III. JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Hillsdale because Hillsdale has sufficient minimum contacts with this District. It operates and markets its services in this District and from locations in this District to consumers throughout the country. Hillsdale is also headquartered and has its principal place of business in this District.

**RESPONSE:** Paragraph 7 contains a legal conclusion to which no response is required. To the extent a response is required, Hillsdale admits that the main address of the Hillsdale College campus is 33 E. College Street Hillsdale, Michigan 49242, within this District, and denies the remaining allegations.

8. This Court's exercise of personal jurisdiction over Hillsdale is also appropriate because Hillsdale's activities in Michigan gave rise to and furthered the

privacy violations suffered by Plaintiffs. Hillsdale's business activities in Michigan caused Plaintiffs private data to be collected and exfiltrated.

**RESPONSE:** Paragraph 8 contains a legal conclusion to which no response is required. To the extent a response is required, Defendant denies.

9. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because this action arises under the VPPA, 18 U.S.C. § 2710.

**RESPONSE:** Paragraph 9 contains a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that this action arises under the VPPA and denies the remaining allegations.

10. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because this is a class action with more than $5,000,000 in controversy where at least one Class member is a citizen of a state of which one Defendant is not a citizen. Website performance data indicates that https://online.hillsdale.edu (and subdomains) receive more than thirty-thousand visitors a month.[2]

**RESPONSE:** Paragraph 10 contains a legal conclusion to which no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations and thus denies the remaining allegations.

## IV. DIVISIONAL ASSIGNMENT

11. Venue is appropriate in this Court because Hillsdale resides in this District.

[2] https://ahrefs.com/traffic-checker/?input=https%3A%2F%2Fonline.hillsdale.edu% 2F&mode=subdomains

**RESPONSE:** Paragraph 11 contains a legal conclusion to which no response is required. To the extent a response is required, Hillsdale admits that the main address of the Hillsdale College campus is 33 E. College Street Hillsdale, Michigan 49242, within this District, and denies the remaining allegations.

12. This action is properly assigned to the Southern Division under Western District of Michigan Local Rule 3.2 because Hillsdale resides in Hillsdale County.

**RESPONSE:** Paragraph 12 contains a legal conclusion to which no response is required. To the extent a response is required, Hillsdale admits that the main address of the Hillsdale College campus is 33 E. College Street Hillsdale, Michigan 49242, within this District, and denies the remaining allegations.

## V. COMMON FACTUAL ALLEGATIONS

### I. BACKGROUND OF VPPA

13. The VPPA generally prohibits the knowing disclosure of information that identifies a consumer as having requested or obtained specific video materials or services. 18 U.S.C. § 2710(b)(1).

**RESPONSE:** The allegations contained in this paragraph purport to refer to the VPPA, 18 U.S.C. § 2710. The statute speaks for itself, and Defendant denies the Plaintiffs' characterizations of the statute.

14. That prohibition applies to anyone "engaged in the business ... of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials ...." 18 U.S.C. § 2710(a)(4).

**RESPONSE:** The allegations contained in this paragraph purport to refer to the VPPA, 18 U.S.C. § 2710. The statute speaks for itself, and Defendant denies the Plaintiffs' characterizations of the statute.

15. Under the statute, the Court may award actual damages (but not less than liquidated damages of $2,500 per violation), punitive damages, equitable relief, reasonable attorneys' fees, and other reasonably incurred litigation costs. *Id.* § 2710(c)(2).

**RESPONSE:** The allegations contained in this paragraph purport to refer to the VPPA, 18 U.S.C. § 2710. The statute speaks for itself, and Defendant denies the Plaintiffs' characterizations of the statute.

16. The VPPA was initially passed in 1988 to protect the privacy of individuals' and their families' video rental, purchase, and viewing data. Leading up to its enactment, members of the United States Senate warned that "[e]very day Americans are forced to provide to businesses and others personal information without having any control over where that information goes." S. Rep. No. 100-599 at 7-8 (1988).

**RESPONSE:** The allegations contained in this paragraph purport to refer to the 1988 Senate Report Number 100-599. The document speaks for itself, and Defendant denies the Plaintiffs' characterizations of it. As to the remaining allegations, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

17. Senators at the time were particularly troubled by disclosures of records that reveal consumers' purchases and rentals of videos and other audiovisual

materials. As Senator Patrick Leahy and the late Senator Paul Simon recognized, records of this nature offer "a window into our loves, likes, and dislikes[,]" such that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." *Id.* at 7-8.

**RESPONSE:** The allegations contained in this paragraph purport to refer to the 1988 Senate Report Number 100-599. The document speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. As to the remaining allegations, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

18. In proposing the Video and Library Privacy Protection Act (later codified as the VPPA), Senator Leahy stated that "[i]n practical terms our right to privacy protects the choice of movies that we watch with our family in our own homes. And it protects the selection of books that we choose to read." 134 Cong. Rec. S5399 (May 10, 1988). Thus, the personal nature of such information and the need to protect it from disclosure inspired the statute: "These activities are at the core of any definition of personhood. They reveal our likes and dislikes, our interests and our whims. They say a great deal about our dreams and ambitions, our fears and our hopes. They reflect our individuality, and they describe us as people." *Id.*

**RESPONSE:** The allegations contained in this paragraph purport to refer to the 1988 Senate Report Number 100-599. The document speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. As to the remaining allegations,

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

19. These statements rang true in 1988 when Congress passed the VPPA, and even more so today, in the modern era of data mining and online video content in which most Americans partake. During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized the point by stating: "While it is true that technology has changed over the years, we must stay faithful to our fundamental right to privacy and freedom. Today, social networking, video streaming, the 'cloud,' mobile apps and other new technologies have revolutionized the availability of Americans' information."[3]

**RESPONSE:** The allegations contained in this paragraph purport to refer to the Statement of the Honorable Patrick Leahy from January 31, 2012. The document speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. As to the remaining allegations, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

20. In this case, Defendant chose to deprive Plaintiffs and class members of their rights under the VPPA by systematically disclosing their Personal Viewing Information to third-parties like Meta (and, upon information and belief, other

[3] *See* Statement of the Honorable Patrick Leahy, United States Senator, January 31, 2012, https://www.judiciary.senate.gov/imo/media/doc/leahy_statement_01_31_12.pdf (last visited January 31, 2024).

businesses), without providing and obtaining from Plaintiffs informed, written consent.

**RESPONSE:** Defendant denies.

## II. BACKGROUND OF THE META PIXEL AND SIMILAR TRACKERS

21. **The Meta Platform.** Meta is an advertising company which sells advertising space on the social media platform it operates, and other locations on the internet and in its web-based applications. Meta's advertising is based on sophisticated user-categorizing and targeting capabilities that are fueled by the personal data of users of the social media platform and other Internet users.[4] Meta's targeting abilities are exceptional because Meta surveils users' online activities, both on and off Meta's own websites and apps.[5] This expansive tracking enables Meta to make highly personal inferences about users, such as about their "interests," "behavior," and "connections."[6] Meta compiles information it obtains, makes such inferences, and then uses them to identify personalized "audiences" likely to respond to particular advertisers' messaging. Access to such audiences is extremely valuable

[4] Meta Business Help Center, *Why advertise on Facebook, Instagram and other Meta technologies*, https://www.facebook.com/business/help/205029060038706 [https://perma.cc/NES6-5W8D].

[5] Meta Business Help Center, *About Meta Pixel*, https://www.facebook.com/business/help/742478679120153?id=1205376682832142 [https://perma.cc/VWK8-7MCH]; Meta, *Facebook Core Audience Targeting*, https://www.facebook.com/business/news/Core-Audiences [https://perma.cc/WX6T-FDWT].

[6] Meta, *Ad Targeting: Help your ads find the people who will love your business*, https://www.facebook.com/business/ads/ad-targeting [https://perma.cc/DU6C-UHFV].

to Meta's advertising clients. In 2022, Meta generated approximately $113.64 billion, nearly 98% of its revenue, through advertising.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. The allegations in this paragraph also purport to rely on pages from Meta's website cited in footnotes 4 through 6. Those webpages speak for themselves, and Defendant denies Plaintiffs' characterizations of them.

22. **The Meta Tracking Pixel.** The Pixel, originally called the Facebook Pixel now also referred to as the Meta Pixel, has been in use since at least 2013, and was modernized in 2015.[7] It is now a primary means through which Meta acquires personal information to create customized audiences for its advertising business. Once activated, the Pixel "tracks the people and type of actions they take,"[8] including each page users' visit, what buttons they click, as well as specific information that users input into a website.[9]

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. The allegations in this paragraph also purport to rely on pages from Meta's website cited in footnotes 7, 8

---

[7] Cecile Ho, Meta, *Announcing Facebook Pixel* (Oct. 14, 2015), https://developers.facebook.com/ads/blog/post/v2/2015/10/14/announcing-facebook-pixel/; Meta for Developers, Meta Pixel, https://developers.facebook.com/docs/meta-pixel/ (last visited November 20, 2024) [https://perma.cc/M7XS-2LEJ].

[8] Meta, Retargeting, https://www.facebook.com/business/goals/retargeting (last visited November 20, 2024).

[9] Meta, Business Help Center, About Meta Pixel, https://www.facebook.com/business/help/ 742478679120153 (last visited November 20, 2024).

and 9. Those webpages speak for themselves, and Defendant otherwise denies Plaintiffs' characterizations of it.

23. The Pixel sends Meta volumes of information about each visit to each website where it is embedded. Regardless of the purpose (if any) a website owner may have for allowing the Pixel to function on its webpages, the code is configured to capture a substantial amount of information by default. Since at least 2015, the Pixel has transmitted HTTP header information, including the URL of each page visited on a website, by default. In 2017, Meta quietly modified the Pixel code to transmit additional information automatically, including "microdata" (details about the website and substance of what it offers), other "contextual information" (including details about the structure of a particular webpage), and "SubscribedButtonClick" information (details about buttons available to click on each page including the text), which fires each time a user clicks on a hyperlink or button on the webpage.[10] Meta made these changes to learn more about website users for advertising purposes.[11] Since 2017, the Pixel has been configured to gather all such information

[10] PixelYourSite, *Automatic Facebook Pixel Events*, https://www.pixelyoursite.com/major-facebook-pixel-update-automatic-facebook-pixel-events [https://perma.cc/2UQU-PG3K]; Carey-Simon, George, WeRSM, *Facebook Pixel is about to Get a Bit Smarter* (Apr. 28, 2017), https://wersm.com/facebook-pixel-get-little-smarter/ [https://perma.cc/4MPQ-DXU8].

[11] David Berry, Dynamo, *Major Update to The Facebook Pixel—Here's what You Need to Know* (May 23, 2017), https://dbdynamo.com/blog/2017/5/23/major-update-to-the-facebook-pixel-heres-what-you-need-to-know [https://perma.cc/3X3R-F6EZ]; Facebook Business, *What's changing with the Facebook pixel*, https://web.archive.org/web/20170810034608/https://www.facebook.com/business/help/1292598407460746 [https://perma.cc/QRC3-6WE3].

indiscriminately and by default without intervention from the website owner requesting the information be tracked.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. The allegations in this paragraph also purport to rely on a webpage called PixelYourSite cited in footnote 10. The webpage speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. The allegations in this paragraph also purport to rely on a webpage called Dynamo cited in footnote 11. The webpage speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

24. In 2018, Meta again modified the default operation of the Pixel to maximize the private information it transmits. Meta introduced a "first-party cookie option" for the Pixel, to circumvent improvements in how web browsers block third-party cookies (a primary means by which Facebook historically tracked people across the web). Being embedded in websites as a first-party cookie, rather than as a third-party cookie, causes users' browsers to treat that Pixel as though it is offered by the website they are visiting, rather than by Meta, a third party. When the Pixel is embedded in a website as a first-party cookie, the third-party cookie blocking functions of modern web browsers do not inhibit the Pixel's collection of data. Operating similarly to, and with the same privacy exemptions applicable to, a first party cookie became another default Pixel setting in or around October 2018.[12]

---

[12] Sergiu Gatlan, Softpedia News, *Facebook to Circumvent Cross-Site Tracking Block with New First-Party Cookie* (Oct. 6, 2018),

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. The allegations in this paragraph also purport to rely on a webpage called Softpedia News cited in footnote 12. The webpage speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

25. In short, circumventing privacy measures designed to protect users' information, the Pixel consistently captures HTTP headers, Pixel-specific data, and Button Click data on every visit to every website through its default operation. Meta acknowledges that the Pixel is configured to collect this information, and can collect the following non-exhaustive categories of information from the webpages where it is embedded:

**Http Headers** – Anything present in HTTP headers. HTTP Headers are a standard web protocol sent between any browser request and any server on the internet. HTTP Headers include IP addresses, information about the web browser, page location, document, referrer and person using the website.

**Pixel-specific Data** – Includes Pixel ID and the Facebook Cookie.

**Button Click Data** – Includes any buttons clicked by site visitors, the labels of those buttons and any pages visited as a result of the button clicks.

---

https://news.softpedia.com/news/facebook-to-circumvent-cross-site-tracking-block-with-new-first-party-cookie-523089.shtml [https://perma.cc/KR3H-PY5P].

**Optional Values** – Developers and marketers can optionally choose to send additional information about the visit through Custom Data events. Example custom data events are conversion value, page type and more.

**Form Field Names** – Includes website field names like email, address, quantity, etc., for when you purchase a product or service. We don't capture field values unless you include them as part of Advanced Matching or optional values.[13]

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. The allegations in this paragraph also purport to rely on the cited material in footnotes 5 and 13. The webpages speak for themselves, and Defendant otherwise denies Plaintiffs' characterizations of it.

26. In all websites where the Pixel operates, when a user exchanges information with the host of that site—such as through a search query or video selection—Meta's software script directs the user's browser to send a separate message to Meta's servers. This second, secret transmission contains the original request sent to the host website, ("GET request"), along with additional data that the Pixel is configured

---

[13] *Meta Pixel*, *supra* n.5; *see also* Meta for Developers, *Meta Pixel: Advanced*, https://developers.facebook.com/docs/facebook-pixel/advanced/ [https://perma.cc/M3EA-LHVM]; Meta Business Help Center, *Best practices for Meta Pixel setup*, https://www.facebook.com/business/help/218844828315224?id=1205376682832142 [https://perma.cc/SU7N-XGFL]; Meta for Developers, *App Events API*, https://developers.facebook.com/docs/marketing-api/app-event-api/ [https://perma.cc/NV4L-XM9S]; Meta for Developers, *Meta Pixel: Get Started*, https://developers.facebook.com/docs/meta-pixel/get-started [https://perma.cc/5W4A-SKGP].

to collect ("POST request).[14] GET and POST requests are communications that contain contents from both the user and from servers associated with the website they are visiting. These transmissions are initiated by Meta code and concurrent with the communications to and from the host website.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. Footnote 14 refers to material in footnote 8 that appears to have been omitted from the Complaint.

27. Meta associates the information it obtains via the Pixel with other information regarding the user, using personal identifiers that are transmitted concurrently with other information the Pixel is configured to collect. For Facebook account-holders, these identifiers include the "c_user" IDs, which allow Meta to link data to a particular Facebook account, and "xs" cookies associated with a browsing session. For both Facebook account-holders and users who do not have a Facebook account, these identifiers also include cookies that Meta ties to their browser, such as "datr" and "fr" cookies.[15]

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. The allegations in this paragraph also purport to rely on the cited material in footnote 15. The webpage speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

[14] *How We Built a Meta Pixel Inspector*, *supra*, n.8.

[15] Meta, *Cookies Policy* (Oct. 5, 2022), https://www.facebook.com/policy/cookies [https://perma.cc/6M55-KWA4].

28. The "c_user" ID labelled in Meta's software script reveals a Facebook account-holder's FID. A subscriber's FID is a unique sequence of numbers linked to that individual's Facebook profile. Entering "facebook.com/[FID]" into a web browser returns the Facebook profile of that particular person. An FID thus identifies a specific person more precisely than a name.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

29. For example, Mark Zuckerberg's FID is reportedly the number "4," so logging into Facebook and typing www.facebook.com/4 in the web browser retrieves Mark Zuckerberg's Facebook page, www.facebook.com/zuck, and additional personally identifiable information contained therein.

**RESPONSE:** The allegations in this paragraph purport to rely on www.facebook.com/zuck. The webpage speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. As to the remaining allegations, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

30. Meta informs websites and customers like Hillsdale that, inter alia, the Pixel allows "you…to track Facebook ad-driven visitor activity on your website…[and] use the data to analyze your website's conversion flows and optimize your ad campaigns."[16] It also highlights that the Pixel enables Meta "to match your

[16] Meta, *Get Started*, https://developers.facebook.com/docs/meta-pixel/get-started [https://perma.cc/5W4A-SKGP].

website visitors to their respective Facebook User accounts."[17] In layman's terms, the Pixel lets websites "tracks the people [that visit] and type of actions they take."[18]

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. The allegations in this paragraph also purport to rely on the cited material in footnotes 16, 17, and 18 to Facebook webpages. The webpages speak for themselves, and Defendant denies Plaintiffs' characterizations of them.

31. Meta feeds the vast quantities of information obtained from the Pixels into its advertising systems, using it to identify users and their personal characteristics, categorize them for Meta's business purposes, and target them with marketing messages from its advertising clients.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

32. Meta acknowledges this use of data acquired through the Pixel tracking code. For example, Meta refers to the Pixel as one of Meta's "Business Tools," and to websites with the Pixel embedded as "Partners." Meta explains in its Privacy Policy, among other places, that Meta uses "[i]nformation from Partners," expressly including information about "[w]ebsites you visit and cookie data, like through . . . the Meta Pixel," "to provide a personalized experience to [users], including ads."[19]

---

[17] *Id.*

[18] Facebook, "How does retargeting on Facebook help your business?," www.facebook.com/ business/goals/retargeting

[19] Meta Privacy Center, *Privacy Policy* (Effective Jan. 1, 2023), https://www.facebook.com/privacy/policy [https://perma.cc/3S7Y-4SPD].

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. The allegations in this paragraph also purport to rely on the cited material to Facebook's privacy policy in footnote 19. The document speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

33. One of the ways that Meta uses data obtained via the Pixel for advertising is by using it to define "audiences" customized for particular advertisers. Meta sells access to three types of tailored audiences.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

34. Meta advertisers can purchase access to "Core Audiences," composed of individuals that Meta has determined to have specified traits and characteristics. Meta assigns users to Core Audiences based on data it has learned and inferred, from data sources like the Pixel, about a range of their personal qualities, including users' location, age, gender, education, job title, connections to other Facebook users or pages, interests and hobbies, and behavior such as prior purchases and device usage.[20]

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. The allegations in this paragraph also purport to rely on the cited material in footnotes 3 and 20, although the only webpage referring to "ad targeting" appears in footnote 6. As already

[20] Ad targeting, supra n.3.

explained, the materials cited in those footnotes speak for themselves, and Defendant otherwise denies Plaintiffs' characterizations of them.

35. Meta also sells access to "Custom Audiences," meaning the ability to reach "people who have already shown interest in [an advertiser's] business, whether they're loyal customers or people who have used [their] app or visited [their] website."[21] Meta assigns users to Custom Audiences based on information from the Meta social media platform, and/or information the advertiser discloses about those users, such as e-mail subscriber lists, and activity tracked on the advertiser's website(s), including via the Pixel.[22]

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. The allegations in this paragraph also purport to rely on the cited material in footnotes 21 and 22. The documents speak for themselves, and Defendant otherwise denies Plaintiffs' characterizations of it.

36. Meta also sells access to "Lookalike Audiences," a Meta feature that "leverages information such as demographics, interests and behaviors from your source audience [i.e., a Custom Audience tailored from the advertiser's records] to find new people who share similar qualities" with existing customers or Custom

---

[21] *Id.*

[22] Meta Business Help Center, *Create a customer List Custom Audience*, https://www.facebook.com/business/help/170456843145568?id=2469097953376494 [https://perma.cc/9M5M-VLTA]; *see also* Adespresso, *Facebook Custom Audiences 101: The Complete Guide for Marketers* (Mar. 23, 2021), https://adespresso.com/blog/facebook-ads-custom-audiences-guide/ [https://perma.cc/NL29-3QP3].

Audiences.[23] To generate Lookalike Audiences, Meta uses data it has obtained from across the web, including from the Pixels embedded in third-party websites that have no relationship with the advertiser requesting access to a Lookalike Audience.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph. The allegations in this paragraph also purport to rely on the cited material in footnote 23. The document speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

37. Other companies like Google, DoubleClick, Propellant, Crazy Egg, Bing, LinkedIn, X Corp. (formerly known as Twitter, Inc.), and TikTok offer similar Trackers to monitor online activity and track specific actions by users at the websites where they are installed. Like Meta's Pixel, those trackers transmit that information to the company that created them and other third-parties to whom the creating company shares data, sells data, or provides data that is based on the transmitted information. Those third-parties, in turn, often transmit that information to other third-parties.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

38. Notably trackers from Google, DoubleClick, X Corp., Bing, Outbrain, operate on online.hillsdale.edu/, collecting and disclosing information about each users (including fields attempting to identify them) and the videos and pages that

[23] Meta Business Help Center, *About lookalike audiences*, https://www.facebook.com/business/help/164749007013531?id=401668390442328 [https://perma.cc/S5T3-99MP].

they have viewed. Upon information belief, Defendant also utilizes additional tracking technologies that run afoul of the VPPA.

**RESPONSE:** To the extent that this paragraph contains a legal conclusion, no response is required. The allegations also refer to https://online.hillsdale.edu/. The website speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

## III. HILLSDALE'S USE OF META'S ADVERTISING TO PROMOTE ITS ONLINE CLASSES

39. Hillsdale is a sophisticated user of Meta and other online advertisement platforms who employs professional staff to manage them. It uses those advertisements to promote classes at online.hillsdale.edu, its distance learning program, the college itself, and to augment sales and donations.[24]

**RESPONSE:** The allegations in this paragraph purport to rely on Hillsdale's webpage cited in footnote 24. The cited material speaks for itself, and Defendant otherwise denies Plaintiffs' characterization of it. Defendant admits that it uses certain Meta services in the ordinary course as a small, private, Christian, classical liberal arts college, including to advertise the college itself as well as the free courses available on online.hillsdale.edu. Defendant denies the remaining allegations in this paragraph.

40. Examples of Hillsdale's Facebook advertising campaigns can be found at https://www.facebook.com/ads/library/?active_status=active&ad_type=all&country=

[24] https://www.hillsdale.edu/hillsdales-online-distance-learning-program/

US&is_targeted_country=false&media_type=all&q=hillsdale%20college%20online&search_type=keyword_unordered.

**RESPONSE:** The allegations in this paragraph purport to rely on the Facebook webpage cited in this paragraph. The webpage speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

41. A senior member of the professional marketing staff for Hillsdale's online learning product stated that social media "plays a huge part" in how it reaches users for the college's "important mission" to spread the ideas taught in its classes.[25]

**RESPONSE:** The allegations in this paragraph purport to rely on the document cited in footnote 25. The document speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

42. In doing so he identified Meta as "a huge source of traffic for us."[26]

**RESPONSE:** The allegations in this paragraph purport to rely on the document cited in footnote 26. The document speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

43. A senior member of Hillsdale's professional marketing staff explained that "Facebook ads are particularly helpful in enrolling new students in Hillsdale's online courses and in helping people to get to know about the college."[27]

[25] Moira Gleason, The Collegian, "Meta restricts Hillsdale Facebook accounts," Sept. 26, 2024, https://hillsdalecollegian.com/2024/09/meta-restricts-hillsdale-facebook-accounts/ (accessed Feb. 10, 2025).

[26] *Id.*

[27] *Id.*

**RESPONSE:** The allegations in this paragraph purport to rely on the document cited in footnote 27. The document speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

44. Although Hillsdale does not collect fees from classes on online.hillsdale.edu it still profits from them, direct and indirectly.

**RESPONSE:** Defendant admits that Hillsdale offers online classes for free. Defendant denies the remaining allegations in this paragraph.

45. First, Hillsdale sells recordings, books, and other materials from its "free" online classes to increase its revenue. For example, it runs an "official store for Hillsdale College Online Courses." *See, e.g.*, https://shop.hillsdale.edu/collections/online-courses.

**RESPONSE:** The allegations in this paragraph purport to rely on the cited webpage. The webpage speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. Defendant denies the remaining allegations.

46. Second, Hillsdale uses its "free" online classes to promote its distance learning program which charges fees to each student. See https://www.hillsdale.edu/hillsdales-online-distance-learning-program/.

**RESPONSE:** The allegations in this paragraph purport to rely on the cited webpage. The webpage speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. Defendant denies the remaining allegations.

47. Third, Hillsdale solicit viewers of its "free" online classes for donations. See https://secured.hillsdale.edu/hillsdale/support-online-courses/. It "counts on" these

donations "that help to underwrite the costs of developing, producing, and distributing [its free online] courses." *Id.*

**RESPONSE:** The allegations in this paragraph purport to rely on the cited webpage. The webpage speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. Defendant denies the remaining allegations.

48. Staff from Meta and Hillsdale have reviewed Hillsdale's online advertising and content and reviewed the ways in which it does and does not comply with each company's goals and regulations.[28]

**RESPONSE:** The allegations in this paragraph purport to rely on the cited materials in footnote 28. The webpage speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. Defendant denies the remaining allegations.

49. To the extent that marketing or other contractors hired by Hillsdale work with its Trackers, advertisements, and website, they were, based on information and belief, hired to augment its marketing, brand, analytics, and data. Accordingly, their actions and omissions as to the Trackers were taken with express or implied agency, within the scope of that agency, and with actual and/or ostensible authority to perform the acts (or omissions) that they performed.

**RESPONSE:** To the extent the allegations in this paragraph call for a legal conclusion, no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

[28] *Id.*

## IV. HILLSDALE KNOWINGLY COLLECTS PROTECTED INFORMATION AND DISCLOSES IT TO META WITHOUT THE USERS' CONSENT

50. Hillsdale, via its online.hillsdale.edu website, offers prerecorded video materials.

**RESPONSE:** To the extent the allegations in this paragraph call for a legal conclusion, no response is required. To the extent a response is required, the allegations in this paragraph purport to refer to online.hillsdale.edu. The website speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

51. To access the majority of those videos, users need to register for an online.hillsdale.edu account.

**RESPONSE:** The allegations in this paragraph purport to refer to the functioning of online.hillsdale.edu. The website speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

52. Some video pages similarly require a user to "enroll." But clicking the enrollment button sends the user to the same online.hillsdale.edu account creation page.

**RESPONSE:** The allegations in this paragraph purport to refer to the functioning of online.hillsdale.edu. The website speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

53. The text at the top of the account creation page confirms that the account is for accessing videos. See https://online.hillsdale.edu/signup ("Create your free account to access Hillsdale College online courses and track your learning progress.")

**RESPONSE:** The allegations in this paragraph purport to refer to the functioning of online.hillsdale.edu. The website speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

54. Hillsdale intentionally and/or knowingly deployed and maintains Trackers such as the Pixel on its website, using them to intentionally and/or knowingly collected and transmit the specific prerecorded videos requested, obtained, and/or watched by specific subscribers to third-parties like Meta. It does so in order for, among other things, Meta and other third-parties to help Hillsdale augment its advertisements and overall online platform.

**RESPONSE:** The allegations in this paragraph call for a legal conclusion, so no response is required. To the extent a response is required, Defendant denies the allegations.

55. At least two pixels operating on Hillsdale's website on February 26, 2025 had pixel IDs 1541527432787341 and 711322226445334.

**RESPONSE:** Admit.

56. Hillsdale knew or should have known that advertising companies like Meta (and related third-parties) profit from their collection of online data in a variety of ways including selling data, forming partnerships with other companies to share data, and selling services that are based in part on data Meta has obtained and information that Meta has learned from it. Accordingly, Hillsdale also knew or should have known that disclosing information about its users to advertising companies like

Meta (and related third-parties) would also result in that information being disclosed to other companies.

**RESPONSE:** The allegations in this paragraph call for a legal conclusion, so no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

57. Hillsdale uses Trackers like the Pixel to track, help optimize, and refine its advertisements online.hillsdale.edu as well as the website itself. When those advertisements drive more traffic to online.hillsdale.edu, it obtains additional revenue via sales and donations, as well as second and third order effects from higher viewership that result in more sales and donations from other buyers and donors. This includes higher reputation, higher visibility on the internet, better datapoints to use in promotional materials to donors, word of mouth that draws in more buyers and donors, etc.

**RESPONSE:** The allegations in this paragraph purport to refer to the functioning of online.hillsdale.edu. The website speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. Defendant admits that it uses certain Meta services in the ordinary course as a small, private, Christian, classical liberal arts college, including to advertise the college itself as well as the free courses available on online.hillsdale.edu. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

58. Hillsdale knowingly embedded the Trackers on online.hillsdale.edu and has maintained them there for at least several years. At the time it installed the Trackers it knew how they functioned, was provided with disclosures about how they functioned, and had information explaining how they functioned. Its employees and agents who installed the Trackers knew how they functioned, as did the employees and agents who used the Trackers to optimize advertisements and Hillsdale's website.

**RESPONSE:** To the extent this allegation contains legal conclusions, no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to admit or deny the allegations in the paragraph.

59. During the installation process for the Pixel, Hillsdale chose certain options from a menu of available "events" that track specific user activity on its website for automatic disclosure to Meta, including personally identifiable information such as a user's FID, a unique and persistent identifier Facebook assigns to each Facebook user. Hillsdale chose for its website to disclose to Meta its subscribers' unencrypted FIDs within a "c_user cookie."

**RESPONSE:** To the extent that the allegations in this paragraph purport to refer to the functioning of online.hillsdale.edu, the website speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

60. Facebook offers a menu of "standard events" from which advertisers can choose, including what content a visitor views or purchases.[29] Advertisers can also create their own tracking parameters by building a "custom event."[30]

**RESPONSE:** The allegations in this paragraph purport to rely on the webpages cited in footnotes 29 and 30. The cited webpages speak for themselves, and Defendant denies Plaintiffs' characterizations of them. Defendant denies the remaining allegations in this paragraph.

61. Advertisers control how the Facebook Tracking Pixel identifies visitors. The Facebook Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[31] HTTP Headers collect "IP addresses, information about the web browser, page location, document, referrer and persons using the website."[32] Pixel-specific Data includes "the Pixel ID and cookie."[33]

**RESPONSE:** The allegations in this paragraph purport to rely on the webpages cited in footnotes 31, 32, and 33. The cited webpages speak for themselves, and Defendant denies Plaintiffs' characterizations of them. Defendant denies the remaining allegations in this paragraph.

62. Meta assigns a unique numerical identifier to each Meta Pixel and maintains records associating each Pixel with the data it transmits and the website

[29] https://www.facebook.com/business/help/402791146561655?id=12053766828321

[30] https://www.facebook.com/business/help/964258670337005?id=1205376682832142

[31] https://developers.facebook.com/docs/facebook-pixel/

[32] *Id.*

[33] *Id.*

where it is embedded.[34] Accordingly, Meta knows which Pixel operated specifically on the Hillsdale's website and what information and communications exchanged between users and Hillsdale were transmitted to Meta by the Pixel on that website.

**RESPONSE:** The allegations in this paragraph purport to rely on the webpage cited in footnote 34. The cited webpage speaks for itself, and Defendant denies Plaintiffs' characterizations of it. As to the remaining allegations in this paragraph, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

63. Hillsdale easily could have programmed its website to ensure that this information is not disclosed to Meta. But it did not do so.

**RESPONSE:** Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

## V. PUBLICLY ACCESSIBLE CODE CONFIRMS THAT HILLSDALE IS DISCLOSING PROTECTED INFORMATION TO META

64. Hillsdale implemented the Pixel on its website and, by so doing, intentionally disclosed the specific videos requested, obtained, and/or watched by specific subscribers.

**RESPONSE:** To the extent the allegations in this paragraph call for a legal conclusion, no response is required. To the extent a response is required, the allegations in this paragraph purport to refer to the functioning of online.hillsdale.edu. The website speaks for itself, and Defendant otherwise denies

[34] AdWisely, *Meta Pixel*, https://adwisely.com/glossary/meta-pixel/ [https://perma.cc/Y8VW-SBLC].

Plaintiffs' characterizations of it. As to the remaining allegations in this paragraph, Defendant denies.

65. This is evidenced from the software script by which the Pixel operates on the Hillsdale website of the Pixel, which reveals the Pixel sharing identifiable and sensitive information from Hillsdale website with Meta.

**RESPONSE:** To the extent the allegations in this paragraph call for a legal conclusion, no response is required. To the extent a response is required, the allegations in this paragraph purport to refer to the functioning of online.hillsdale.edu. The website speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

66. As the code below shows, when a visitor to online.hillsdale.edu clicks on a video that actives a code "trigger" that collects the video url and title and discloses that information to Meta. *[Image]*

**RESPONSE:** To the extent the allegations in this paragraph call for a legal conclusion, no response is required. To the extent a response is required, the allegations in this paragraph purport to refer to the functioning of online.hillsdale.edu. The website speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it.

67. In the example above, the user requested or viewed the video entitled "Totalitarian Novels."

**RESPONSE:** Defendant admits that one of the free online courses available on the https://online.hillsdale.edu/ website is titled "Totalitarian Novels" but otherwise

denies Plaintiffs' characterization of that website. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

68. That information, along with the url location of that video, is then transmitted to Meta via the Pixel.

**RESPONSE:** To the extent the allegations in this paragraph purport to refer to the functioning of online.hillsdale.edu, the website speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in this paragraph.

69. That same code also transmits to Meta a c_user cookie containing the visitor's FID. In this example, the FID number is redacted to preserve the privacy of the user. *[Image]*

**RESPONSE:** To the extent the allegations in this paragraph purport to refer to the functioning of online.hillsdale.edu, the website speaks for itself, and Defendant otherwise denies Plaintiffs' characterizations of it. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in this paragraph.

70. Meta (or anyone) can then use an FID to identify the user who viewed the video by entering "facebook.com/" followed by the FID into their browser bar.

**RESPONSE:** Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

71. Meta (or anyone) can then compile a list of users of online.hillsdale.edu with their FIDs, real names, urls of videos viewed, and titles of videos viewed. See § II.

**RESPONSE:** Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

72. When a visitor's browser has recently logged out of Facebook, a smaller set of cookies is transmitted: *[Image]*

**RESPONSE:** Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

73. The transmission also includes the _fbp cookie. *[Image]*

**RESPONSE:** Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

74. The fr cookie contains, at least, an encrypted FID.

**RESPONSE:** Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

75. The fr cookie also contains a browser identifier.

**RESPONSE:** Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

76. The _fbp cookie contains, at least, an unencrypted value that uniquely identifies the browser.

**RESPONSE:** Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

77. The data cookie also identified a browser.

**RESPONSE:** Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

78. Meta uses those cookies to identify users.

**RESPONSE:** Defendant lacks knowledge or information sufficient to admit or deny the allegations in the paragraph.

79. Hillsdale's site also uses "Automatic Matching for Partner Integrations."

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

80. That means Hillsdale configures its Pixel to "look for recognizable form field and other sources on your website that contain information such as first name, last name and email."[35] Accordingly, the Pixel is also capturing the identifiers that a user submits through form fields.

**RESPONSE:** The allegations in this paragraph rely on the cited material in footnote 35. The cited material speaks for itself, and Defendant denies Plaintiffs' characterization of it. As to the remaining allegations, Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

81. The Pixel then transmits that information to Meta along with the user's other event data, such as viewing videos.

**RESPONSE:** To the extent that the allegation in this paragraph makes a legal conclusion, no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to admit or deny the allegations in the paragraph.

---

[35] https://www.facebook.com/business/help/611774685654668?id=12053766828321

82. Meta also matches the Automatic Matching parameters with each user's other tracked activity, to help Hillsdale keep a better catalog of activity on its site.

**RESPONSE:** Defendant lacks knowledge or information sufficient to admit or deny the allegations in the paragraph.

83. All of those elements of Automatic Matching for Partner Integrations were disclosed by Meta to Hillsdale.

**RESPONSE:** To the extent that the allegation in this paragraph makes a legal conclusion, no response is required. Defendant lacks knowledge or information sufficient to admit or deny the allegations in the paragraph.

84. Hillsdale knowingly used and uses Automatic Matching for Partner Integrations after learning that information.

**RESPONSE:** To the extent that the allegation in this paragraph makes a legal conclusion, no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to admit or deny the allegations in the paragraph.

85. Hillsdale uses Automatic Matching for Partner Integrations to support its business.

**RESPONSE:** Defendant does not know what Plaintiffs mean by "to support its business" and thus denies that allegation. As to the remaining allegations, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

86. Facebook data confirms that Hillsdale data is matched with a user's profile. Meta allows users to download their "Off-Facebook activity," which is a "summary of activity that businesses and organizations share with us about your interactions, such as visiting their apps or websites."[36]

**RESPONSE:** The allegations in this paragraph purport to rely on the material cited in footnote 36. The cited material speaks for itself, and Defendant denies Plaintiffs' characterization of it. Defendant lacks knowledge or information sufficient to admit or deny the remaining allegations in the paragraph.

87. Plaintiffs' Off-Facebook activity confirms that Hillsdale disclosed their video-viewing history.

**RESPONSE:** To the extent that the allegation in this paragraph makes a legal conclusion, no response is required. To the extent a response is required, Defendant denies.

## VI. HILLSDALE DID NOT OBTAIN THE STATUTORILY REQUIRED CONSENT TO DISCLOSE THIS INFORMATION

88. A video tape service provider may only disclose information with "informed, written consent" that meets certain statutory requirements.[37] 18 U.S.C. § 2710(b)(2)(B).

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required.

[36] https://www.facebook.com/help/2207256696182627

[37] Excluding exceptions that do not apply here, such as for law enforcement. 18 U.S.C. § 2710(b)(2)(C).

89. This "informed, written consent" must be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." *Id.*

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required.

90. It may also only be given "in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner." *Id.*

**RESPONSE:** This paragraph contains a legal conclusion, so no response is required.

91. Such consent is also only effective if "the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." *Id.*

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required.

92. Hillsdale did not obtain informed written consent from class members.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

93. Among other things, Hillsdale did not:

a. Properly explain to users what information it was collecting and disclosing prior to collecting and disclosing it;

b. Tell users that their Personal Viewing Information would be shared with companies like Meta, coupled with their FID, which can be used to identify them;

c. Obtain consent in writing;

d. Seek consent via a separate form;

e. Seek consent for the limited time period required by statute or renew old consent;

f. Provide the required opportunity to withdraw consent.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

94. For those reasons, among others, Hillsdale's Privacy Policy also does not meet the requirements of 18 U.S.C. § 2710(b)(2)(B).

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

95. The application of the language in Hillsdale's Privacy Policy to Personal Viewing Information is ambiguous.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

96. Hillsdale's disclosures are also not "incident [to its] ordinary course of business" (18 U.S.C. § 2710(b)(2)(E)) because it would be just as able to provide all video services that it provides even if its website had no Trackers.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

## VI. TOLLING, CONCEALMENT, AND ESTOPPEL

97. The statutes of limitation applicable to Plaintiffs' claims are tolled as a result of Defendant's knowing and active concealment of its conduct alleged herein.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

98. Among other things, Defendant affirmatively hid its true actions and knowingly made statements that were misleading and concealed the true nature of its conduct and operation.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

99. Moreover, Plaintiffs were ignorant of the information essential to pursue their claims, without any fault or lack of diligence on their own part.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

100. Furthermore, under the circumstances Defendant was under a duty to disclose the true character, quality, and nature of its activities to Plaintiffs. Defendant therefore is estopped from relying on any statute of limitations.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

101. All applicable statutes of limitation also have been tolled by operation of the discovery rule. Specifically, Plaintiffs could not have learned through the exercise of reasonable diligence of Defendant's conduct as alleged herein.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

## VII. PLAINTIFFS' EXPERIENCES

102. Plaintiff Stephen Robert Goodman is a resident of Long Branch, New Jersey.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

103. Plaintiff at all relevant times had a personal Facebook page and a personal FID.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

104. At all relevant times, his Facebook page contained his personal information, including his name.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

105. He visited online.hillsdale.edu on or around January, March, June, and November 2023 to request, obtain, and/or view video classes.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

106. He registered for an online.hillsdale.edu account so that he may view video classes.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

107. When he requested, obtained, and or viewed those video classes his Personal Viewing Information was disclosed to Meta and other third-parties via Trackers.

**RESPONSE:** To the extent this paragraph contains a legal conclusion, no response is required. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

108. The information that was disclosed is directly connected to Plaintiff using identifiers like his name or FID.

**RESPONSE:** To the extent this paragraph contains a legal conclusion, no response is required. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

109. Each disclosure of Plaintiff Stephen Robert Goodman's Personal Viewing Information violates the VPPA.

**RESPONSE:** The allegation in this paragraph calls for a legal conclusion, no response is required. To the extent a response is required, Defendant denies.

110. Plaintiff Stephen Robert Goodman never consented, agreed, authorized, or otherwise permitted Defendant to disclose their Personal Viewing Information. Plaintiff Stephen Robert Goodman has never been provided with any VPPA

complaint notice that Defendant discloses its digital subscribers' Personal Viewing Information, or any means of opting out of such disclosures.

**RESPONSE:** To the extent the allegations in this paragraph contain legal conclusions, no response is required. To the extent a response is required, Defendant denies.

111. Plaintiff Charles JM. Greer is a resident of St. Francis, Wisconsin.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

112. Plaintiff has, and at all relevant times had, a personal Facebook page and a personal FID.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

113. At all relevant times, his Facebook page contained his personal information, including his name.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

114. He visited online.hillsdale.edu throughout 2023 and 2024 to request, obtain, and/or view video classes.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

115. He registered for an online.hillsdale.edu account so that he may view video classes.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

116. When he requested, obtained, and/or viewed those video classes his Personal Viewing Information was disclosed to Meta and other third-parties via Trackers.

**RESPONSE:** The allegation in this paragraph calls for a legal conclusion, no response is required. To the extent a response is required, Defendant denies.

117. The information that was disclosed is directly connected to Plaintiff Charles JM. Greer using identifiers like his name or FID.

**RESPONSE:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

118. Each disclosure of Plaintiff Charles JM. Greer's Personal Viewing Information violates the VPPA.

**RESPONSE:** The allegation in this paragraph contains legal conclusions, no response is required. To the extent a response is required, Defendant denies.

119. Plaintiff Charles JM. Greer never consented, agreed, authorized or otherwise permitted Defendant to disclose their Personal Viewing Information. Plaintiff Charles JM. Greer has never been provided with any VPPA complaint notice that Defendant discloses its digital subscribers' Personal Viewing Information, or any means of opting out of such disclosures.

**RESPONSE:** To the extent the allegations in this paragraph contain legal conclusions, no response is required. To the extent a response is required, Defendant denies.

## VIII. CLASS ALLEGATIONS

120. Plaintiffs bring this lawsuit under Rules 23(a) and (b) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons in the United States who visited online.hillsdale.edu (including subdomains), viewed at least one video during the time that Trackers were active at that website, and have or have ever had an FID.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required.

121. Excluded from the Class are Defendant, any controlled person of Defendant, as well as the officers and directors of Defendant and the immediate family members of any such person. Also excluded are any judge who may preside over this cause of action and the immediate family members of any such person. Plaintiffs reserve the right to modify, change, or expand the Class definitions based upon discovery and further investigation.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required.

122. **Numerosity.** The Class consists of at least hundreds of individuals, making joinder impractical.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

123. **Commonality and Predominance.** Common questions of law and fact exist with regard to the claim and predominate over questions affecting only individual Class members. Questions common to the Class includes:

a. Whether Hillsdale installed the maintained the Pixel knowing what information it would transmit;

b. What information the Trackers collect;

c. Whether the information collected by the Trackers is personally identifiable information under the VPPA;

d. Whether Hillsdale knowingly disclosed Plaintiffs' Personal Viewing Information to third-parties via the Trackers;

e. Whether Plaintiffs consented to these disclosures;

f. Whether these disclosures were incident to Hillsdale's ordinary course of business;

g. Whether Hillsdale should be enjoined from collecting Plaintiffs' personal information;

h. Whether Hillsdale should be required to destroy any Personal Viewing Information obtained from Plaintiffs.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

124. **Typicality.** Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs, like all Class members, have been injured by Hillsdale's misconduct in obtaining Personal Viewing Information.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

125. **Adequacy of Representation.** Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy-protection cases. Plaintiffs do not have any interests antagonistic to those of the Class.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

126. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Hillsdale to comply with the law. Moreover, because the amount of each individual Class member's claim is small relative to the complexity of litigation, and because of Hillsdale's financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

127. **Injunctive Relief.** Plaintiffs also satisfy the requirements for maintaining a class under Rule 23(b)(2). Defendant acted on grounds that apply generally to the

proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

128. **Particular Issues.** Plaintiffs also satisfy the requirements for maintaining a class action under Rule 23(c)(4). Their claims consist of particular issues that are common to all Class members and are capable of class-wide resolution that will significantly advance the litigation.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

## IX. CAUSE OF ACTION

### Violation of the Video Privacy Protection Act<br>18 U.S.C. § 2710, et seq.

129. Plaintiffs incorporate and reallege the above factual allegations set forth in §§ I–VIII.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. Defendant incorporates its responses to the same.

130. Plaintiffs bring this cause of action on behalf of the Class.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required.

131. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifiable information" concerning any consumer to a third-

party without the "informed, written consent (including through an electronic means using the Internet) of the consumer[.]" 18 U.S.C. § 2710(b)(1); id. § 2710(b)(2)(B).

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required.

132. A "video tape service provider" is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials[.]" *Id.* § 2710(a)(4). Defendant, therefore, is a "video tape service provider," because it is engaged in the business of delivering audio visual materials that are similar to prerecorded video cassette tapes and those broadcasts affect interstate or foreign commerce.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

133. As defined in 18 U.S.C. § 2710(a)(1), a "'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]"

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required.

134. As alleged above, Plaintiffs are subscribers to Defendant's services, who viewed its video content. This makes Plaintiffs "consumers" and/or "subscribers".

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

135. Plaintiffs act of registering for online.hillsdale.edu accounts in order to watch videos underscores that they were "consumers" and/or "subscribers" of its video content.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

136. As defined in 18 U.S.C. § 2710(a)(3), "'personally identifiable information' includes information that identifies a person as having requested or obtained specific video materials or services from a video tape service provider[.]"

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required.

137. Defendant knowingly disclosed Plaintiffs' and Class members' Personal Viewing Information—specifically, their FIDs and the title and URL of the videos they requested or obtained—to Meta and other third-parties.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

138. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and each Class member to Meta (and anyone else with an internet connection) as an individual who requested or obtained Defendant's video content, including the specific video materials viewed. Indeed, anyone with an FID could identify the individual associated with it simply by entering "facebook.com/[FID]" into a web browser.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

139. Under the VPPA, "informed, written consent" must be (1) "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer"; and (2) "at the election of the consumer" is either "given at the time the disclosure is sought" or "given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner[.]" *Id.* § 2710(b)(2)(B). Defendant failed to obtain informed, written consent under this definition.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

140. In addition, the VPPA creates an opt-out right for consumers. *Id.* § 2710(b)(2)(B) (iii). It requires video-tape service providers like Defendant to also "provide[] an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election[.]" *Id.* Defendant failed to provide an opportunity to opt out as required by the VPPA.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

141. Defendant knowingly disclosed Plaintiffs' and Class members' Personal Viewing Information to Meta and other third-parties. Defendant programmed Trackers like the Pixel into their website code, knowing that Meta and other third-

parties would receive specific video titles and URLs as well as the subscribers' FIDs when subscribers requested or obtained videos.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

142. By disclosing Plaintiffs' and Class members' Personal Viewing Information, Defendant violated Plaintiffs' and Class members' statutorily protected right to privacy in their video-watching habits.

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

143. As a result of the above violations, Defendant is liable to Plaintiffs and other Class members for liquidated damages in an amount of $2,500 per violation. *Id.* § 2710(c)(2)(A). Under the statute, Defendant is also liable for reasonable attorneys' fees and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendant in the future. *Id.* § 2710(c)(2).

**RESPONSE:** The allegations in this paragraph contain legal conclusions, so no response is required. To the extent a response is required, Defendant denies.

## AFFIRMATIVE DEFENSES

1. The Complaint fails to state a claim upon which relief can be granted.

2. Plaintiffs lack standing to sue.

3. Plaintiffs' claims are barred by waiver, laches, estoppel, acquiescence, and/or unclean hands.

4. Defendant is not a "video tape service provider." 18 U.S.C. § 2710(a)(4).

5. Defendant is not "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

6. The Video Privacy Protection Act, 18 U.S.C. § 2710, does not apply to Defendant as a nonprofit, private college.

7. Plaintiffs are not "consumer[s]" in relation to Defendant. 18 U.S.C. § 2710(a)(1).

8. Plaintiffs are not "subscriber[s]" in relation to Defendant. 18 U.S.C. § 2710(a)(1).

9. Defendant did not disclose Plaintiffs' "personally identifiable information." 18 U.S.C. § 2710(b)(1).

10. To the extent any disclosure occurred, Plaintiffs knowingly disclosed their own information directly to Meta.

11. To the extent any disclosure occurred, the disclosed information was not "personally identifiable information." 18 U.S.C. § 2710(a)(3).

12. To the extent any disclosure occurred, Plaintiffs consented to that disclosure.

13. Defendant did not "knowingly disclose[ ]" Plaintiffs' "personally identifiable information." 18 U.S.C. § 2710(b)(1).

14. To the extent Defendant did disclose any of Plaintiffs' "personally identifiable information," it was "incident to the ordinary course of business." 18 U.S.C. § 2710(b)(2)(E).

15. Any injuries or damages that Plaintiffs sustained were caused or contributed to by the intent or conduct of Plaintiffs and/or persons other than Defendant over whom Defendant had no control or right of control and for whom Defendant is not responsible.

16. Plaintiffs' claims are barred for lack of causation and lack of proximate causation between any alleged act or omission of Defendant and the claims, damages, and harms alleged in the Complaint.

17. Defendant is entitled to the procedural, substantive, and other protections, caps, and limitations provided by any applicable state and federal law regarding Plaintiffs' attempt to seek compensatory and punitive damages.

18. Plaintiffs' claims, in whole or in part, are barred by the statute of limitations.

19. The Video Privacy Protection Act, 18 U.S.C. § 2710, cannot apply to the facts alleged in the Complaint because it is a penal statute that must be strictly construed.

20. Applying the Video Privacy Protection Act, 18 U.S.C. § 2710, to the facts alleged in the Complaint violates Defendant's First Amendment right to free speech.

21. Plaintiffs' claims not suitable for class adjudication because Plaintiffs cannot establish numerosity, commonality, typicality, adequacy, or predominance.

22. Plaintiffs' damages are barred because of Plaintiff's own contributory negligence and/or assumption of risk.

23. Plaintiffs failed to mitigate damages.

24. Plaintiffs' claims are barred due to spoliation of evidence.

25. Defendant reserves the right to assert all applicable defenses under Federal Rules of Civil Procedure 8(c) and 12(b), as investigation and discovery proceeds.

26. Plaintiffs' request for injunctive relief is moot.

27. To the extent Plaintiffs receive any recovery from any other party, Defendant is entitled to an appropriate set-off or reduction of any judgment against it.

**REQUEST FOR JURY TRIAL**

Defendant demands a trial by jury on all issues.

Dated: 12/8/2025

Respectfully submitted,

*/s/ Collin J. Vierra*
COLLIN J. VIERRA
EIMER STAHL LLP
1999 S. Bascom Ave. Ste. 1025
Campbell, CA 95008
(408) 889-1668
(312) 692-1718 (fax)
cvierra@eimerstahl.com

RYAN J. WALSH
EIMER STAHL LLP
2 E. Mifflin St. Ste. 703
Madison, WI 53703
(608) 620-8346
(312) 692-1718 (fax)
rwalsh@eimerstahl.com

*Counsel for Defendant Hillsdale College*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed a true and correct copy of the foregoing with the Clerk of Court via the CM/ECF system.

All participants in this case are registered CM/ECF users and will be served by CM/ECF notification.

Dated: 12/8/2025

*/s/ Collin J. Vierra*
COLLIN J. VIERRA